MARY M. KELLER, Respondent, v. HOME LIFE INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals, July 22, 1902.

1. **Evidence of Physician:** TESTIMONY OF PHYSICIAN WHEN WAIVED BY INSURED IS BINDING ON BENEFICIARY. Where an insured, on behalf of himself and those claiming an interest in the policy, waived the provisions of law forbidding any physician or surgeon from disclosing information acquired while attending him in a professional capacity, it is held that such waiver is binding on the beneficiary in a suit upon the policy, and that it was error for the trial court, in the circumstances stated in the opinion, to exclude testimony concerning the state of health of the insured by physicians who attended him shortly before his application.

2. **Practice, Trial:** PROFESSIONAL INFORMATION OBTAINED BY PHYSICIAN MAY BE WAIVED: STATUTORY CONSTRUCTION. The privilege of secrecy secured by the statute in regard to professional information obtained by a physician from a patient, may be waived by the latter.

3. ——: ——: ——: PUBLIC POLICY. There is no public policy which forbids a waiver by a patient of the professional secrecy imposed upon a physician in favor of a patient by the statute of Missouri (Revised Statutes 1899, section 4659).

4. ——: ——: ——: ——. It is a general rule that a party may waive any right conferred by law for his benefit where the waiver does not conflict with public policy.

5. ——: ——: WAIVER OF BENEFIT OF MECHANIC'S LIEN LAW. A party may waive in advance the benefit of the mechanic's lien law.

6. ——: ——: INDORSER OF NOTE: WAIVER OF NOTICE OF DISHONOR. An indorser of a note may waive in advance presentment and notice of dishonor.

7. **Beneficiary of policy is bound by all legal stipulations by the insured.** The beneficiary of a policy is bound by all legal stipulations of the insured, and is subject to be defeated by fraud on his part, although the beneficiary may not have participated therein.

8. **Policy, Construction of.** Where a life policy referred to an application as a part of it, and the application warranted the statements and answers contained in a third document containing declarations to the medical examiner, a statement in the last-named paper, signed by the insured, should be taken to be a part of the policy.

9. ——: DENIAL OF LIABILITY IS WAIVER OF PROOF OF LOSS. Absolute denial of liability under a policy of life insurance amounts to a waiver of proofs of loss.

10. **Practice, Appellate:** OBJECTIONS TO CONSTITUTIONALITY OF STATUTE CAN NOT BE RAISED FOR THE FIRST TIME IN THE APPELLATE COURT. An objection to a judgment on the ground that a statute is unconstitutional which allows damages in case of vexatious refusal to pay an insurance policy, can not be raised for the first time in an appellate court.

11. ——: ——. Points involving constitutional construction must be raised in some appropriate way in the trial court, otherwise they are not available for review.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED.

*T. D. Hines* and *W. H. Miller* for appellant.

(1) The giving of instruction 1 on behalf of respondent and the refusal to give instruction 2 asked by appellant, constitutes reversal error. Ashford v. Ins. Co., 80 Mo. App. 638; 1 Bigelow on Fraud, p. 410; Kerr on Fraud and Mistake, p. 57; White v. Ins. Co., 4 Dillon (U. S. C. C.) 177. (2) The fourth point insisted on by appellant is the refusal of the court to permit the various physicians to testify as to the physical condition of the deceased prior to and immediately after the making of the application for insurance in the face of this express waiver over his signature in the application for the insurance in suit. This waiver is in the following language: "I expressly waive on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or surgeon from disclosing any information acquired while attending me in a professional capacity." This is certainly and clearly erroneous. Underhill on Evidence, p. 260, sec. 178; Andrews v. Life Ass'n, 34 Fed. Rep. 870; 19 Amer. and Eng. Ency. of Law, p. 150; Blackburn v. Crawford's Lessee, 70 U. S. 175; Groll v. Tower, 85 Mo. 249; Carrington v. City of St. Louis, 89 Mo. 216; Squires v. City of Chillicothe, 89 Mo. 230; Blair v. Railroad, 89 Mo. 337. (3) The jury, in rendering its verdict, inflicted a penalty of ten per cent on this appellant, on the ground that the refusal to pay was vexatious. This is clearly error, first, because the evidence will not justify such a conclusion, and, secondly, because the statute itself is violative of

article 5 of the amendments of the Constitution of the United States. Paddock v. Railroad, 155 Mo. 524; Railroad v. Ellis, 165 U. S. 165; Williamson v. Ins. Co., decided by the U. S. Circuit Court, Western Division, Western District of Missouri, in November, 1900. This last case is decided upon the identical statute in question and is decisive of this point. (4) It was certainly error on the part of the court to permit witness Pallette to detail over appellant's objection, the conversation with and the conduct of the assured at the time of taking his application, in view of the fact that the application was reduced to writing. 11 Amer. and Eng. Ency. of Law, p. 300; Boggs v. Ins. Co., 30 Mo. 63; Ins. Co. v. Mowery, 96 U. S. 544; Dolliver v. Ins. Co., 131 Mass. 39.

*Wilson Cramer* for respondent.

(1) The second instruction given for plaintiff properly declares the law. It is based on a plain statutory provision which is intended to force prompt payment of death claims, and enters into the contract of insurance. R. S. 1889, sec. 8012. (2) The objection that section 8012, supra, is unconstitutional, is made for the first time in this court. No such point was made, directly or indirectly, in the court below, and the suggestion comes too late. Baldwin v. Pries, 103 Mo. 287; Bennett v. Railway Co., 105 Mo. 644; Turley v. Barnes, 131 Mo. 548. (3) The court did right in excluding on objection of plaintiff, the evidence of physicians who had treated the deceased prior to his making application for insurance. These physicians were incompetent under the statutes. R. S. 1899, sec. 4659; Groll v. Tower, 85 Mo. 249; Thompson v. Ish, 99 Mo. 160. A physician is incompetent under the statute, whether his information is derived through communication with his patient or from observation only. Gartside v. Ins. Co., 76 Mo. 446; Thompson v. Ish, 99 Mo. 160. It is conceded that the protection of the statute may be

waived by the patient or his representatives. Thompson v. Ish, 99 Mo. 160; Davenport v. City of Hannibal, 108 Mo. 471. In the case at bar, however, there was no waiver, either by the insured or the beneficiary. (4) The contract between the insurer and the insured is contained in the policy and the application therefor, which, by the terms of the policy, is made a part of the contract and is printed on the back of the policy. Neither the policy nor the application contain any reference whatever to a waiver of the statutory provision, relative to the testimony of attending physicians. (5) The statements made by the insured to Pallette, defendant's soliciting agent, at the time of making application for insurance are competent evidence, and defendant's objections to the testimony of Pallette were properly overruled. Boggs v. Ins. Co., 30 Mo. 63.

BARCLAY, J.—Plaintiff brought this action to collect the amount of an insurance policy for $2,000, issued by defendant on the life of her husband. Defendant is a life insurance company, incorporated in New York, and authorized to do business in Missouri. The date of the policy is October 30, 1899. Plaintiff's husband died June 15, 1900, having paid one annual premium of $79.72.

The petition on the policy is in ordinary form. Besides demanding the amount of the policy it claims, furthermore, ten per cent damages thereon and a reasonable attorney's fee on the ground that the refusal by the defendant to pay was vexatious, within the meaning of section 8012, Revised Statutes 1899.

The main features of the answer are a general denial and several special defenses. Defendant alleges that the policy was issued on the faith and in consideration of certain representations concerning the health and habits of the insured, submitted in his application to defendant for the insurance, and that these representations were false and then known to him so to be.

The statements of the insured are set forth at length in the answer. Their substance is that the insured did not drink wine, spirituous or malt liquor; had never used them to excess; was in perfect health, had never been subject to coughing or to spitting blood, or to chronic cough, asthma, or other symptoms indicating pulmonary weakness, etc. It is alleged that each of the answers was false and known to be by the insured at the time; that by them the insurance was fraudulently procured, and that his death was caused by tuberculosis of the lungs existing to his knowledge at the time he obtained the insurance.

The answer is quite long. We give merely an outline of it.

One feature was that it alleged a tender of the premium to plaintiff on discovery of the alleged fraud before the action was begun. The defendant further renewed by its answer the tender (including lawful interest) and paid the principal and interest into court for plaintiff.

A reply by plaintiff put in issue the new matter.

At the trial before the learned circuit judge and a jury plaintiff introduced in evidence the policy, on the back of which appeared a copy of the application of the insured. Some parts of these documents will be quoted presently.

Plaintiff then gave proof of the death of the insured and of her relationship to him as wife, as well as of circumstances from which a waiver of proof of loss might be inferred. These circumstances consisted of the tender to plaintiff of the premium and an absolute denial of liability on the part of defendant, after demand of payment. Jefferson v. Life Ass'n, 69 Mo. App. (St. L.) 126.

Defendant offered in evidence, without objection, a paper having this caption: "Declarations made to the medical examiner of the Home Life Insurance Company." It contained first a series of questions in

regard to other insurance, family and health history of the applicant. The answers in regard to the applicant's health and habits were, in all material particulars, identical with the statements in the application which conformed generally to the recitals thereof in the answer.

Following the answers to the questions of the medical examiner, on the paper just described, appears this language:

"I warrant on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder each of the above answers to be true, full and complete.

"I hereby declare that the accompanying application to the Home Life Insurance Company for an insurance on my life, dated September 18, 1899, was signed by me.

"I expressly waive, on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or surgeon from disclosing any information acquired while attending me in a professional capacity.

"Witnessed by A. L. Franklin, M. D.,

"Medical Examiner.

"August W. Keller.
"Signature of the Applicant."

The policy itself opens in this way (omitting caption):

"Home Life Insurance Company, by this policy of insurance, in consideration of the statements and agreements made in the application for this policy, which are hereby made a part of this contract, and of the payment in advance of seventy-nine dollars and seventy-two cents, and of the payment of the same amount to be made thereafter, at the office of the said company in the city of New York, on or before noon

of the nineteenth day of September, in every year during the continuance of this contract," etc., "does promise and agree to pay two thousand dollars to Mary M. Keller, if living, if not, then to her husband, August W. Keller, his executors, administrators, or assigns," etc.

The application of the insured contains, besides the answer to questions, the following statement:

"I warrant on behalf of myself and of any person who shall have or claim any interest in any policy issued under this application that all the foregoing statements and answers are true, full and complete, whether written by my hand or not, and are offered to the company together with those contained in the declarations to the Home Life Insurance Company medical examiner, as a consideration for, and as the basis of, the contract with said company under any policy issued under this application."

Other statements not necessary to quote appear in the application which purports to be duly signed by the insured, September 18, 1899.

The defendant in the course of the trial offered the evidence of two physicians who had severally attended the insured in a professional character, in the spring of 1899; but the trial court refused to permit either to testify to his observations of the insured or to his opinion of Mr. Keller's physical condition or health (with reference to the points of the alleged misrepresentations). The ground of objection on which the testimony along that line was excluded appears to be that these medical gentlemen were disqualified as witnesses by the force of section 4659 (R. S. 1899). Defendant duly saved exceptions to the various rulings to that effect.

It will not be needful to review particularly the testimony at this time. The defendant, according to the theory of the learned trial judge in the instructions, gave testimony tending to prove some of its charges of

misrepresentation within the purview of section 7890 (R. S. 1899).

When rebuttal testimony was in order, plaintiff introduced as a witness the insurance solicitor who secured Mr. Keller for defendant as a risk. It appeared that, at the time of the trial, witness was general manager of another company. He deposed that as agent for defendant he solicited Mr. Keller to take the policy, that he went to his residence and asked him to insure. On his further testimony there occurred certain rulings which can be shown best by an excerpt from the record before us:

"Q. Did you ask him questions about his health and that of his family? A. Such questions as I am prompted to ask in soliciting insurance.

"Q. You may tell the jury in what manner he answered you?

"Objected to by counsel for defendant, 'The contract speaks for itself, no matter what passed between the agent and the insured. Here is the contract with the questions and answers reduced to writing.'

"The objection was overruled; to which ruling of the court counsel for defendant excepted at the time.

"A. Well, I first asked him—

"Counsel for defendant objected to witness telling what he asked him and what the answer was, because it was reduced to writing. The objection was overruled; to which ruling of the court counsel for defendant excepted at the time.

"I asked him if there was any consumption or heart trouble or hereditary diseases in his family, as it would save some time if there was; we would not spend the time talking insurance if there was anything in the family to prohibit his getting insurance; he says there was no consumption, and mentioned the fact that there were several in the family and that they never had any evidence of consumption in the family—

"Objected to—

"Witness: I called attention to the fact that he was a skinny man, was not very fleshy; for that reason I asked him more particularly, and there was nothing in his answers but what was favorable; and I was impressed with the honesty and sincerity with which he answered my questions.

"Q. Did he withhold from you any information you asked for? A. No.

"Objected to by counsel for defendant because irrelevant and immaterial and incompetent in this issue.

"The Court: Go on.

"Counsel for defendant excepted to the ruling of the court."

At the close of the testimony the court instructed the jury (after finding the formal facts) that plaintiff was entitled to recover unless they found from the evidence "that the execution of said policy was procured by said August W. Keller by misrepresentations made by him to defendant or its agent."

And the court added:

"And the court further instructs you that no misrepresentations in securing said policy of insurance are material or sufficient to avoid said policy, unless it shall be shown by the evidence that the matter misrepresented actually contributed to produce the death of said Keller."

The court gave a further instruction for plaintiff in regard to damages in the nature of interest if it was found that the refusal to pay the amount of the policy was vexatious. Nothing was said as to a recovery of an attorney's fee.

For defendant the court told the jury that the application and the written declarations to the medical examiner are part of the policy.

Another instruction was given for defendant but it will not require notice.

The jury found a verdict for plaintiff in the sum of $2,243, and judgment was rendered upon it. De-

fendant moved in due season for a new trial on a number of grounds, including the aforesaid rulings on evidence and other points not necessary now to name. The motion was overruled. Defendant appealed to this court in the ordinary way.

1. The statement of the assured contained in the declarations to the medical examiner became a part of the consideration of the policy, according to the terms of the latter and of the application, which brought those three documents into one contract. The waiver of professional privilege which thus became a part of the contract of insurance declared that the insured, on behalf of himself and of any person claiming any interest in the policy, expressly waived "all provisions of law forbidding any physician or surgeon from disclosing any information acquired while attending" him in a professional capacity.

It is settled law that a patient may waive for himself the protection of secrecy imposed by the Missouri statute (R. S. 1899, sec. 4659) on the physician or surgeon who attends the patient in a professional capacity, touching the disclosure of facts acquired by the former in that intimate relation. Blair v. Railroad, 89 Mo. 334; Davenport v. Hannibal, 108 Mo. 471; Ess v. Griffith, 139 Mo. 330; Cramer v. Hurt, 154 Mo. 112.

The question is whether such a waiver may be made in advance, as in this instance, so as to be binding on a beneficiary of the contract other than the party making the waiver.

The general rule is that a party may waive for himself, at least, a right or privilege conferred by law for his benefit where such waiver does not conflict with any principle of public policy. Thus one may waive in advance the benefit of the lien conferred by the statute concerning mechanics' liens. Sanders Brick Co. v. Barr, 76 Mo. App. (St. L.) 380. An indorser, likewise, at the time of his indorsement may in writing waive presentment and notice of dishonor of the paper

to which he becomes a party. Maddox v. Duncan, 143 Mo. 613; Wilke v. Chandon, 1 Wash. 355; Story, Bills, sec. 320.

We discern no reason of public policy to forbid a waiver (by the patient himself) of the professional secrecy imposed upon the physician, by our statute, for the benefit of the patient. Especially in view of the state of our law touching misrepresentations (R. S. 1899, sec. 7890) which makes the cause of death of paramount importance in suits on contested life policies, such a waiver is promotive of fair dealing and the development of the truth concerning the creation and discharge of contracts of insurance. No public policy appears to be adverse to enforcing such a waiver.

If the patient himself may make such a waiver in advance, as seems in accord with principle, we do not see why he may not make such a waiver an element of his contract of insurance, and having done so the waiver will be binding on all who come within its terms. Here the waiver is expressly designed and expressed to include "any person who shall have, or claim any interest in any policy issued hereunder." A beneficiary in a policy is bound by the other valid and legal stipulations entered into by the insured, and is even liable to be defeated by fraud on the part of the latter in which the beneficiary had no part. Carpenter v. Ins. Co., 1 Story 57; Burrus v. Life Ass'n, 96 Va. 543. If the waiver is a valid part of the stipulations of the policy, as we construe it to be, we consider it binding on all persons who claim under the policy.

Looking at the subject by the aid of authority we find such a waiver held valid by a jurist of long experience in the administration of Missouri law, whose opinion carries great weight. Adreveno v. Mut. Res. Fund Life Ass'n, 34 Fed. 870. While in a different jurisdiction his conclusion is approved by a court of high authority in an opinion by another eminent judge,

evidencing most careful consideration of the subject. Foley v. Royal Arcanum, 151 N. Y. 196.

We conclude that the learned trial judge, in the case at bar, should have recognized the potency of the waiver in question, and should have allowed the two physicians who, as described, attended upon the insured, to testify to the facts bearing upon the issues of misrepresentation tendered by the answer of defendant.

For the error in ruling to the contrary the judgment should be reversed.

2. Another serious point of error is assigned on the admission in rebuttal of testimony reciting oral statements by the deceased in regard to his health, etc., to defendant's soliciting agent, prior to the written application for the policy. The objection urged is that all the oral negotiations were merged in the final writings.

As the cause should be retried for the error developed already, it is not necessary to enter on a discussion of the ruling on this rebuttal testimony further than to say that upon a new trial all ground of such criticism may readily be avoided.

3. The defendant has raised in this court the question of the validity of the statute imposing damages in the nature of a penalty for the alleged vexatious refusal of defendant to pay the amount of the policy. R. S. 1899, sec. 8012. Defendant relies on Williamson v. Ins. Co., 105 Fed. 31, to support its contention that said statute is unconstitutional.

If the point was properly subject to review on this record, it would be our duty to certify the cause to the Supreme Court. Const. Mo., Amendt. 1884, sec. 3; R. S. 1899, sec. 1657. But that issue of constitutional law was in no way raised in the trial court. It is therefore not open for consideration on appeal. That proposition must be taken to be the settled law of Missouri, as expounded in our highest court. Bennett v. Rail-

road, 105 Mo. 642; Turley v. Barnes, 131 Mo. 548.

It results that the judgment should be reversed and the cause remanded. It is so ordered. Bland, P. J., and Goode, J., concur.