## STEGER LUMBER CO. v. OKLAHOMA PRESBYTERIAN COLLEGE FOR GIRLS, OF DURANT, *et al.*

No. 3786.    Opinion Filed October 15, 1912.

(127 Pac. 381.)

1.  **MECHANICS' LIENS**—Proceedings to Perfect—Service of Notice. Service of written notice of the filing of a lien by a subcontractor, who furnished materials to a contractor, and who desires to avail himself of the provisions of section 6153, Comp. Laws 1909, cannot be had by posting a copy of the notice or statement of lien in a conspicuous place on the land or any building thereon, unless said land or buildings be unoccupied.

2.  **SAME.** The fact that an attempt was made to serve a copy of such notice of lien upon the occupant of the building, but without success, is not sufficient. If the premises are occupied, personal service must be had upon the occupant, where the owner cannot, with due diligence, be found in the county; the requirements of the statute in this regard being first complied with.

3.  **SAME—Waiver of Service of Notice.** Where a foreign corporation, which. has no agent within the state upon whom service of notice of a mechanics' lien may be served, is having a building constructed within the state through the instrumentality of a separate and distinct domestic corporation, which is to occupy and have charge of said building when completed, and where, within a period of two weeks following the filing of a sub-contractor's lien on said building, and the day following the completion of said building, both the foreign and domestic corporation join in an action under section 6160, Comp. Laws 1909, and ask to have the several liens filed by materialmen adjudicated and determined, and where the provisions of section 6153 of the statute have been complied with, except as to notice to the owner, **held**, that the relation of the parties, being considered in connection with the bringing of the action, was sufficient to constitute a waiver of the formality of service of notice on the owner.

(Syllabus by Sharp, C.)

*Error from District Court, Bryan County;*
*Summers Hardy, Judge.*

Action by the Oklahoma Presbyterian College for Girls, of Durant, and another against the Steger Lumber Company and others. From the judgment, defendant brings error. Reversed and remanded, with instructions.

February 16, 1911, the defendants in error, the Oklahoma Presbyterian College for Girls, of Durant, Okla., and the Executive Committee of Home Missions of the Presbyterian Church in the United States, brought suit in the district court of Bryan county, as authorized under the provisions of section 6160, Comp. Laws 1909, naming the M. J. Gill Construction Company, of Ardmore, Okla., the National Surety Company, the Kansas City Structural Steel Company, the Choctaw Pressed Brick Company, Pearce Bros., Mrs. Laura Beilharz, Will Leach & Co., the Steger Lumber Company, the A..L. Severance Hardware Company, the Grider-Potts Hardware Company, A. H. Wolff, the Bortoli Mosaic & Tile Company, B. M. McDaniel, S. O. Maxey, the Joplin Sash & Door Works, the Southern Architectural Cement Stone Company, the Durant Drug Company, the United Sash & Door Company, J. R. Price, and Fraley's Planing Mill, of Ardmore, Okla., as defendants. Personal judgment was sought against defendants M. J. Gill Construction Company and the National Surety Company. It was further asked that the other defendants be required to appear and prove their liens against the building and real estate upon which the same was situated, and that the validity thereof be determined by the court. Defendant Steger Lumber Company filed its answer, claiming a materialman's lien upon the buildings and premises described in plaintiffs' petition by reason of two mechanics' liens, the first, dated September 1, 1910, to secure the payment of $4,027.08, the second, dated January 30, 1911, to secure the payment of $894.71, said sums being the amount due it by the contractor of the college building, the M. J. Gill Construction Company, and asked the foreclosure of its lien for the purpose of discharging said indebtedness. The lien of September 1st was allowed, that of January 30th disallowed, by the court; the latter lien claim being disallowed upon the ground that no legal and sufficient notice was given the owner of the filing of the lien statement, and that the same was null and void and constituted a cloud·upon the title of the owner, and should be canceled and set aside.

· *Utterback, Hayes & McDonald* and *Kyle & Newman,* for plaintiff in error.

*C. C. Hatchett* and *Robert Crockett,* for defendants in error.

Opinion by SHARP, C. (after stating the facts as above). Numerous assignments of error are urged, but two of which it will be necessary to consider: (1) Was the attempted service of notice sufficient? (2) Did the plaintiffs subsequently waive the service of statutory notice by the institution of the present action to fix and determine the various liens of the claimants? The Executive Committee of Home Missions of the Presbyterian Church of the United States of America is a nonresident corporation, and at the time had appointed no agent in the state upon whom service of notice or process might be had. The Oklahoma Presbyterian College for Girls is a resident corporation. At the time involved, W. T. Mathews was its president and O. R. Nicholson its treasurer. On the 17th day of August, 1909, the latter corporation entered into a written contract with M. J. Gill of Ardmore, Okla., doing business under the trade-name of the M. J. Gill Construction Company, for the erection of a college building on block 18, in the West End Heights addition to the city of Durant, for the contract price of $57,500. The money was furnished largely by the former corporation, though the local corporation contributed to the building fund. It was the agreement of the parties that the building, premises, and school should be under the control of the Oklahoma Presbyterian College for Girls, notwithstanding the title thereto was in the Executive Committee of Home Missions of the Presbyterian Church of the United States of America. On or about June 10, 1909, the officers of the college corporation learned that the construction company had not applied the payments made upon the estimates of the architect to the payment of claims for material and labor, and shortly thereafter an arrangement was entered into, whereby the college corporation should take charge of the work and complete the building under the contract with the construction company, and apply all future payments direct to the satisfaction of claims for labor and material. At the time of making the new agreement, there had been paid to the construction company on account $44,338.50. The materials provided by claimant under its second contract with the construction company were fur-

nished between September 1 and December 14, 1910. Its lien was filed January 30th following. The building was completed February 15th, and plaintiffs' action was filed the following day.

It was alleged in plaintiffs' petition that the claimant and numerous other lien claimants had each filed with the clerk of the district court of Bryan county purported liens upon the college building and real estate on which the same was situated, amounting to an aggregate of $16,017.96, and it asked that the M. J. Gill Construction Company and the National Surety Company (surety upon its original construction contract) appear and defend against the alleged liens, and that each of said claimant defendants be required to appear and prove their liens, and that the validity thereof be determined by the court. Prior to the bringing of said action, the present claimant attempted to serve a statutory notice of lien. The service of the notice made was insufficient. The statute regulating the service of notice of a subcontractor's lien provides: First, that notice in writing may be served upon the owner of the land; second, that if, with due diligence, the owner cannot be found in the county where the land is situated, the claimant, after filing an affidavit setting forth such facts, may serve a copy of such statement upon the occupant of the land; third, if the land be unoccupied, the claimant shall post a copy of the statement in a conspicuous place upon the land, or any building thereon. Neither the first nor second of these provisions was complied with. An attempt was made to observe the third; but this form of service of notice may only be had where the lands or improvements, or both, are unoccupied. The court in its decree found that the college building was occupied by Dr. Morrison, the president of the faculty, prior to September 25, 1910, and that school commenced in the building October 13th thereafter, and continued without interruption until the completion of the building in February following. The form of substituted service adopted was therefore one not authorized by law. The fact that an attempt was made to serve a copy upon the occupant of the building, but without avail, is of no consequence, as the statute does not provide that service may be had by posting if the occupant cannot be found. The officer does not

attempt to say that the buildings were vacant and unoccupied, but that he did not find the occupant at the building when he called to serve the notice. In fact, the officer admits in his testimony that some one had moved into the building, and that on another occasion he found W. T. Mathews there and served notice on him. Had personal service been had upon some officer of the college corporation, it is probable that it would be sufficient, as the relation existing between the college corporation and the Executive Committee was such as would, perhaps, constitute the former the agent of the latter for the purpose named.

Considering next the question that the plaintiffs waived the service of a statutory notice of the lien claim, we are confronted with a proposition not free of difficulty. The sufficiency of the form of notice is not questioned; the service alone being attacked. The lien statement was filed with the clerk of the district court on the same day that service thereof on the owner was attempted. The contest in no way involves the rights of third parties, unless it be considered that the college corporation itself is a third party. A lien is obtained upon a compliance with the provisions of the statute, unless there be such a waiver as would obviate the necessity thereof, or the owner has in some way by his own conduct estopped himself from questioning the sufficiency of the service of notice. Mere knowledge to the owner that a certain person is at work, or furnishing material, is not sufficient to entitle such person to a lien without other notice by or on behalf of such person. Boisot on Mechanics' Liens, sec. 353; 27 Cyc. 111. The rule, however, has its exceptions, and in the consideration of this case, we think, cannot properly be invoked. As already shown, the Executive Committee of the Home Missions of the Presbyterian Church of the United States of America was a nonresident corporation, and had designated no one in the state upon whom service of notice might be made. It was actively engaged in collecting funds for the construction of the college building, and exercised a supervisory control over the domestic college corporation. The latter corporation, by its subsequent written contract with the construction company, directly obligated itself to pay for all additional material and labor. Whether or

not this is such a promise as would authorize a personal judgment against the Oklahoma corporation, or both the Oklahoma and Georgia corporations, or either, it is unnecessary to here determine. We mention it only for the purpose of showing a state of facts bringing, not a mere knowledge that materials were being furnished, but to show a direct and active participation in the work, and that it was only through this interference that the building was completed, and the purposes of the foreign corporation finally consummated. This, taken in connection with, the action of both corporations in instituting a suit for the purpose of determining the validity, number, and amount of the several liens upon the building, presents a state of facts such as, in our judgment, obviated the necessity of the service of notice.

Since a mechanics' lien is, to some extent, an involuntary incumbrance and a secret lien, it is eminently proper that the owner should be notified of the lien before it is perfected. One of the objects of notice is to prevent the owner from paying the account twice, and to give him an opportunity to investigate the merits of the demand before he decides whether he will pay it, or will permit his property to be subjected to a lien. The general principle on which the statutes requiring notice of mechanics' liens are based is that notice should always be given in cases where the owner, not being in privity of contract with the lien claimant, would not otherwise know what, if anything, is due to such claimant. No complaint is made that the owner suffered any loss by reason of acts or omissions of the subcontractor, but it took prompt and active recognition of claimant's demand at a time long before it was necessary for notice to be served on it. They commenced their action the day following the completion of the building, and sixteen days after claimant filed and attempted to serve a notice of its lien. One year is given in which to bring this character of action. Comp. Laws 1909, sec. 6160. The purpose of its action, as already observed, was to have adjudicated the liens of the different claimants, including that of the Steger Lumber Company. The bringing of the action and the making of the claimant a party defendant, and the seeking to have adjudicated the validity and amount of its lien, constituted

a waiver of any further necessity for service of notice on the plaintiffs, and in legal effect constituted a waiver of or acceptance of service of notice. By it every purpose and object of a strict compliance with the terms of the statute was obtained. The principle that a person of full age, acting *sui juris,* can waive a statutory, and even a constitutional, provision in his own favor, affecting simply his own property or alienable rights, and not involving considerations of public policy, is fundamental. That provision of the mechanics' lien act, requiring notice on the owner, was one, as already shown, for its own benefit, and which it could waive. *Bowen v. Aubrey,* 22 Cal. 566; *Keller v. Home Life Ins. Co.,* 95 Mo. App. 627, 69 S. W. 612; *Davis v. La Crosse Hospital Ass'n,* 121 Wis. 579, 99 N. W. 351, 1 Ann. Cas. 950; *Willison v. Douglas,* 66 Md. 99, 6 Atl. 530.

Under the Illinois mechanics' lien law, in force July 1, 1887, it was provided that:

"Until the statement provided for in section 35 of the act should be made in the manner and form as therein provided, the contractor should have no right of action or lien against the owner on account of said contract." (Laws 1887, p. 220.)

In *Floyd v. Rathledge,* 41 Ill. App. 370, the court, havnig under consideration this provision of the statute, found that there was no pretense that the provision of the statute mentioned was complied with, but it was contended that the plaintiff in error waived the statutory provisions. The court held the testimony insufficient, either to constitute a waiver or an estoppel, but recognized that the provisions of the statute might be waived in proper cases, or that the party might estop himself to deny waiver by his conduct. In *Bonheim v. Meany,* 43 Ill. App. 532, the same statute being again under consideration, the court held the making of the statement a condition precedent to the maintenance of the action, unless the proof showed that the statement had been waived by the owner, or that there was an acceptance of the work done.

We conclude, therefore, by reason of the relations of the parties, and the subsequent bringing of the suit to adjudicate and determine the legal status of the claims of various materialmen and mechanics, including claimant, that plaintiffs waived

their rights to service of notice of the lien statement and affidavit, and that the judgment of the trial court should be reversed and the cause remanded, with instructions to cause to be entered a judgment in favor of Steger Lumber Company, adjudging it to have a lien upon the lands, premises, and buildings of the plaintiffs, and to determine the order of payment among the various lien claimants whose liens have been established by final judgment, and for further proceedings in conformity with this opinion.

By the Court: It is so ordered.