DULCIE CROMEENES, Respondent, v. SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD, a Corporation, Appellant.

Springfield Court of Appeals, August 10, 1920.

1. **NISURANCE: Certificate Void for Misrepresentation as to Venereal Disease.** Where member in application for certificate made false representation that he had not suffered from gonorrhea or syphilis

Cromeenes v. W. O. W.

within the preceding five years, beneficiary could not recover unless certificate under by-law of society had become incontestable.

2. WINTESS: Applicant for Life Policy May Waive Incompetency of Physician. Applicant for life policy may waive the incompetency of a physician who has treated him, under Revised Statutes 1909, section 6362, by a written stipulation to that effect in the application, in which case the claim of privilege is not available to physician.

3. ———: Statement to Physician by Person Other Than Patient Held Not ''Privileged Communication.'' In an action on benefit certificate defended on ground that member had misrepresented that he had not suffered from gonorrhea within specified period prior to application, testimony of a physician, who was treating eyes of a baby suffering from gonorrheal affection, that the member had told the doctor that he (the member) had had gonorrhea, held not privileged, under Revised Statutes 1909, section 6362, since statement was not made to doctor in his professional capacity, the baby, and not the member, being the patient.

Appeal from Circuit Court of Pemiscot County.—*Hon. Sterling H. McCarty,* Judge.

REVERSED AND REMANDED.

*N. C. Hawkins* for appellant.

The court erred in saying in the presence and hearing of the jury: Why do you want to waste my time? (Abs. 30). If you can show he is not dead, show it (Abs. 33). Go ahead—this is our witness, too (Abs. 39). Yes, sustain the objection (Abs. 39). This is a confidential conversation, doctor may answer if he wants to, or not (Abs. 40). I know, that, what next (Abs. 41)? You can prove that by his wife, she is here (Abs. 25). Wait a minute, we are not trying the baby. If you'll object to this immaterial stuff, I'll sustain it (Abs. 56). State v. Davis, 217 S. W. 87, 91.

*Sam J. Corbett* and *S. I. Stiles* for respondent.

Objections to remarks of the court during trial are matters of exception and must be brought to the attention

of the trial court in motion for new trial, and if not cannot
be urged on appeal. McClintock y. Bank, 120 Mo. 127;
Joplin, etc., v. Joplin, 177 Mo. 496-532; McLaughlin v.
Schawacker, 31 Mo. App. 365; Harris v. Powell, 56 Mo.
App. 24; Ashby v. Road Co., 111 Mo. App. 79.

BRADLEY, J.—Plaintiff, the widow of J. Ray
Cromeenes, sued to recover on a certificate of insurance
issued by defendant in which certificate plaintiff is the
beneficiary. On trial before the court and a jury plaintiff
recovered, and defendant appealed.

Insured was a member of the local camp at Caruthers-
ville, Mo., and had been since August, 1908. On August
19, 1908, defendant issued its certificate in the sum of
$1000 to insured, and in this certificate the mother of in-
sured was the named beneficiary. Insured married in
September, 1911, and on August 17, 1915, made applica-
tion to increase his certificate $1000, and designated plain-
tiff as the beneficiary of the increase. The original cer-
tificate was surrendered, and a new one issued on October
5, 1915, in which the mother was named as the beneficiary
to the extent of $1000 in lieu of the old certificate, and
plaintiff was named as the beneficiary of the increase.
Insured died on December 21, 1918, while in good stand-
ing. Proofs of death were made, and defendant paid the
$1000 to the mother, this being the amount of the original
certificate, but refused to pay plaintiff.

The defense is bottomed upon alleged misrepresenta-
tions of the insured in his application and medical exam-
inaton for the increase. Defendant alleges that at the
time of the application, and when the policy was issued,
and when received and receipted for by the insured that
he in fact was suffering from gonorrhea, syphilis, pneu-
monia and consumption, and had been for five years prior,
although he had represented to the contrary. In the
medical examination insured was asked and answered:
"Have you consulted or been treated by a physician for
any disease or injury during the past five years? No."
Defendant alleges this answer to be false. In an affidavit
dated January 18, 1919, as a part of the proofs of death

plaintiff gave influenza as the cause. Plaintiff further stated in this affidavit that the first signs of failing health that she had observed was about eighteen months prior. Insured died in Colorado, and the attending physician in an affidavit which was a part of the proofs of death, gave this account of the last illness: "How long have you known the deceased? A. 6 days. What was his apparent age? A. 28. At last illness how long was deceased sick? Three or four weeks (from patient's history). When did deceased show the first symptoms of his final illness? A. Dec. 16, 1918 (from patient's history). When, how long and for what did you treat deceased during his last illness? Dec. 16, 1918, from personal knowledge. Pulmonary tuberculosis. Date of your first visit? Dec. 16, 1918. What was the cause of death? Pulmonary tuberculosis. Duration? 3 yrs. What was the remote cause of death? Epidemic influenza (?). I did not see the patient to Dec. 16, 1918. Have you any knowledge or have you ever heard that deceased suffered from any other disease prior to his last illness? Epidemic influenza (?)."

Defendant sought to prove that insured was treated by physicians for pneumonia within the five years prior to the date of the application and medical examination. Dr. Conrad testified that he thought he treated insured for pneumonia in 1915, and prior to August 23rd; that he did not keep a book more than a year or two, and that he then had no book showing the date. Another physician testified that he went with Dr. Conrad at the latter's request to see insured when he had pneumonia, but that he made no charge, and did not remember the date. Plaintiff testified postively that the sickness these doctors were speaking of was in the spring of 1916 and subsequent to the issuing of the certificate sued on. This was all the evidence on that feature of the case and the jury's verdict settled that issue. There is nothing in the record tending to show that insured was afflicted with tuberculosis at the time of the application or receipt for the policy, so that question does not exist except in the pleadings.

Insured was asked in the application if he had ever had gonorrhea or syphilis, and answered that he had not. Defendant sought to prove this answer false. Dr. Luten testified about going to see insured with Dr. Conrad as heretofore stated, then was asked by defendant: "Q. What else did you treat him for? A. I've treated him on several different occasions probably little trivial sickness. He had neuralgia once for a day or two. Q. Ever treat him for gonorrhea? Mr. Corbett: I object to that because no date is fixed. By the court: I will sustain the objection. Q. Did you ever treat him for gonorrhea before the year 1915? Mr. Corbett: I object to that, too uncertain and indefinite. By the court: That is a confidential conversation, doctor may answer if he wants to or not. Mr. Hawkins: Exception. Mr. Corbett: We object to this because it is a matter between physician and patient and he doesn't have to disclose anything he treated him for. By the court: I know that, what next. A. I would rather not answer. By the court: He doesn't have to answer. Mr. Hawkins: We except to the ruling. Q. Did you ever treat him for syphilis? Mr. Corbett: We object to that for the same reasons. By the court: Same ruling. Mr. Hawkins: Exception. A. I would rather not answer. Q. Is there any testimony concerning the treatment you gave him, consultations with him, you would be willing to testify about under the ruling of the court? Mr. Corbett: I object to that. By the court: Same ruling. . . . Exception. A. No, not any more than I have treated him for trivial . . . know once he had neuralgia. Q. You do remember that you treated him for something that you prefer not to state here in court? Mr. Corbett: I object to that. By the court: Sustained—exception."

Dr. Faris was called on behalf of defendant, and the following occurred: "I knew J. Roy Cromeenes. I never did treat him at any time. Q. did you hear him make a statement in which he said he had had gonorrhea? Mr. Corbett: We object to that, no time is fixed and wouldn't be binding on the plaintiff in this

case. By the court: Fix the time. Q. Prior to 1915? A. Yes, sir. Q. When did he make the statement? A. Well, I couldn't tell you the date, I have a record of it but 'I' don't remember it . . . it was about I would judge, about four or six weeks after the .boy was born. I don't know how old the baby is. Q. How came this to come up between you and him? Mr. Corbett: I object, if he was treating the child that wouldn't have anything to do with this case. By the court: Sustain the objection. Mr. Hawkins: We except. Q. State whether or not you were treating his infant child for gonorrheal affection of the eyes at that time and he told you as a matter of history of that case that he had had gonorrhea? Mr. Corbett: I object to that, no time is fixed and under this case· he must have had it five years next before this application was made. By the court: Sustain the objection. Mr. Hawkins: We except. Q. Did the child have gonorrheal affliction of the eye? Mr. Corbett: I object because the child is not a part of this suit. By the court: Sustain the objection. Mr. Hawkins: We except.''

After the foregoing took place defendant introduced in evidence the application which contained this clause: ''I waive for myself and beneficiaries the privileges and benefits of any and all laws now in force or may hereafter he enacted in regard to disqualifying any physician from testifying concerning any information obtained by him in his professional capacity.''

Plaintiff was called and testified in rebuttal: ''My name is Dulcie Cromeenes. I am the wife of J. Roy Cromeenes. He died 21st day of December, 1918. We had lived together from September 8, 1911, to December 21, 1918. Q. Tell the jury whether or not at any time when you lived with him that he had either gonorrhea or syphilis? Mr. Hawkins: I object to that, evidentiary facts have not been given by which this witness would· be authorized to predicate an. answer, and for the further reason those diseases being highly technical, and difficult even for physicians to discover, might or might not be true without this witness, knowing any-

thing about it. By the court: If it was such a stage as to affect his health it would seem to the court that she would probably be able to know, so the court will overrule your objectin. Mr. Hawkins: Exception. A. Not to my knowledge. By the court: Not to your knowledge. Witness: Yes, sir. By the court: And you married him in 1911, you say? Witness: Yes, sir. By the court: When was the baby born? Witness: On the 13th of October, 1912. Q. (Cross-examination.) Did he ever go to see a doctor before 1915? A. Not only like Dr. Luten stated awhile ago; just a little technical—just a little trivial matter, like neuralgia. I never knew of his having those venereal diseases. I did not know the boy was afflicted with the trouble in his eyes. I took him to Dr. Faris but he didn't state what was the cause. He didn't tell me. That was when he was sick, I don't remember the date. I don't remember how old he was. He had something wrong with his eyes. Q. His eyes were in bad shape? By the court: Wait a minute, we are not trying the baby, Mr. Hawkins. We are not trying the baby, but it is a very evidentiary fact. Q. I would like to know when it was you came down here? By the court: If you'll make an objection to this immaterial stuff, I'll sustain it. Mr. Corbett: I object to this, then. I never did hear my husband say that he had gonorrhea or syphilis. We were going to St. Louis to have baby's eyes treated. I don't remember how old the baby was, the best I can remember he must have been about two or three months old. Q. One of his eyes is completely gone, isn't it? Mr. Corbett: I object to what his condition is now. By the court: Sustained. Mr. Hawkins: Exception. Q. He lost one eye . . . (interrupted). By the court: I sustained the objection, Mr. Hawkins. Mr. Hawkins: I propose to show by this witness (interrupted). By the court: I have sustained the objection. Mr. Hawkins: I want to state in the record—I propose to show by this witness that one of the eyes of this child is out and the other is nearly gone as a result of gonorrheal affections.

The witness stated that she had never had any of those diseases."

Plaintiff cannot recover if it is established as a fact that insured had had gonorrhea or syphilis, unless there is some by law that makes the certificate incontestable after five years as is intimated, but not shown, therefore, the question is: Did the court err to defendant's detriment in its rulings on defendant's efforts to prove that insured had had these diseases? The statute, section 6362, Revised Statutes 1909, provides that a physician or surgeon shall be incompetent to testify "concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician or to do any act for his as a surgeon." One applying for a life insurance policy may waive the incompetency of a physician who has treated the applicant by a written stipulation to that effect in the application. [Keller v. Ins. Co., 95 Mo. App. 627, 69 S. W. 612; Modern Woodmen v. Angle, 127 Mo. App. 94, 104 S. W. 297; Frazier v. Ins. Co., 161 Mo. App. 709, 141 S. W. 936; Epstein v. Railroad, 250 Mo. 1, 156 S. W. 699; Hicks v. Life Ins. Co., 196 Mo. App. 162, 190 S. W. 661.] It is wholly useless to enter into a discussion as to the right or power of the patient to waive the incompetency of a physician to testify to such matters as are mentioned in the statute. An elaborate discussion of the question may be found in Epstein v. Railroad, supra. It is also ruled in the Epstein case that the privilege of not testifying as granted to a physician by our statute is a privilege inuring alone to the patient. If this privilege inures only to the patient, then it does not inure to the physician, and it follows that if the patient has waived the incompetency created by the statute, the physician when called as a witness cannot decline to give evidence which would be incompetent, but for the waiver of the patient. It seems that in the case at bar the trial court was ruling on the competency of the physician to testify on the theory that the physi-

cian could claim the information as privileged under the statute as well as the patient. We are of the opinion that the learned trial court was in error in this regard, and that the evidence of the physician as to the information gained while treating insured was, in view of the waiver in the application, competent, and the physician cannot claim this privilege when waived by the patient. Plaintiff makes the point that at the time the physician was offered that the application containing the waiver had not been introduced in evidence, and that after this waiver was in evidence the defendant did not again offer the physician for further proof. Plaintiff had introduced the certificate which provided, among other things, that the application for membership constituted a part of the agreement between defendant and the insured. It is clear also that the trial court did not rule on the theory that no waiver had been shown, but on the erroneous theory that the physician could invoke the privilege of the statute if he desired. So we say in the circumstances here it was error to permit the physician to claim the privilege of the statute when the patient had expressly waived it, and this waiver was binding on plaintiff as held in the cases we have cited.

If the insured told Dr. Faris that he, the insured, had had gonorrhea, when this physician was treating the baby's eyes, we can see no reason for excluding such evidence. This was not information that came to the witness in his professional capacity while treating insured. So far as we are advised this proffered evidence is no more within the statute than had the insured made the statement that he had had gonorrhea to a lay witness. But as the competency of the offered evidence tending to show that the baby was suffering from gonorrheal affection, we think the bar of the statute prevails. The privilege inures to the patient. The baby was certainly the patient, and as to whether it was suffering from a gonorrheal affection or infection should remain within the veil of secrecy authorized by the statute.

Dr. Luten testified that he had treated the insured on several occasions, "probably little trivial sickness. He had neuralgia once for a day or two." Defendant urges that this evidence settles the issues in its favor. In the application insured was asked if he had had neuralgia, and answered no. We have never understood that a little "trivial sickness" having symptoms of some disease, but lasting only a day or two would render void even a *fraternal* beneficiary certificate. Besides the record does not show when the insured had neuralgia or whether he sought a physician or a physician treated him for it. Defendant with one hand would remove plaintiff's technical barrier that it did not again offer the evidence of the physician after the waiver was shown to exist, and with the other hand would erect a molehill and declare it a mountain. So far as this record before us shows, we think that the only question of fact to be determined is whether the insured had had gonorrhea or syphilis at the time he made application for the $1000 increase in his certificate. And in view of the waiver defendant should be permitted to prove that the insured had or had had gonorrhea or syphilis by the physician or physicians who may have gained this information while the relation of patient and physician existed.

This disposes of all points that merit consideration, or that will likely arise on a retrial of the cause. For the errors noted the cause should be reversed and remanded, and it is so ordered.

*Farrington, J.,* concurs. *Sturgis, P. J.,* concurs, but expresses no opinion as to the admissibility of the evidence of the physician treating the insured's child as to its physical condition, that question not being briefed, but see Thompson v. Ish, 99 Mo. 160, 176, 12 S. W. 510.