232 S.W.2d 812 (1950)
RUSSELL
v.
MISSOURI INS. CO.
No. 27893.
St. Louis Court of Appeals. Missouri.
September 19, 1950.
Rehearing Denied October 19, 1950.
*813 Ellis S. Outlaw, St. Louis, John J. Spencer, Jr., Washington, D. C., for appellant.
Jones, Hocker, Gladney & Grand and James C. Jones, III, all of St. Louis, for respondent.
WOLFE, Commissioner.
This is a suit on an insurance policy for five hundred dollars claimed to be due the beneficiary by reason of the death of her husband, the insured. The suit was instituted in the Magistrate Court of the City of St. Louis where the plaintiff prevailed and the defendant appealed to the circuit court. Upon trial in the circuit court, a jury returned a verdict for the plaintiff and in due time thereafter the defendant filed a motion for a judgment, in accordance with its motion for a directed verdict or, in the alternative, a motion for a new trial. The court sustained the defendant's motion for a judgment and it then, in the alternative, sustained the motion for a new trial, on the ground that the verdict was against the weight of the evidence, if it should be held error to have entered the judgment for the defendant.
By its answer the defendant admits that the policy insuring the life of Roy Elnia Russell was issued and that the plaintiff is the beneficiary under it. It is also admitted that the insured died and that the five hundred dollars have not been paid. The answer then asserts that the policy lapsed on September 24, 1947, and was reinstated October 13, 1947, upon the application of the insured stating that he was in good health and had not been treated for illness or impairment of health since the original application for the policy. Again on December 24, 1947, the policy lapsed for nonpayment of a premium due and it was again reinstated on December 31, 1947, upon like representations by the insured.
It is alleged that the representations made by the insured in both applications for reinstatement were false and fraudulent and that the insured suffered from and was treated for heart trouble after the original application for the policy. It is stated that he died of heart disease on June 5, 1948. The sum of $30.50, representing the total amount of the premiums collected by the defendant from the time the policy first lapsed, was paid into court.
The plaintiff testified that her husband had never been treated by a doctor and was "never bed sick" until shortly before his death. She said that she did not know that he had been treated at the Washington University Medical Clinic because she "would be at work", and that she did not know that he was sick with heart disease until just before he died.
The defendant's evidence as to the lapsing and reinstatements of the policy conformed approximately to the allegations contained in its answer. The applications for reinstatement, put in evidence, contained the statements alleged and were signed by the insured whose signature was identified by the plaintiff. Hospital records and the death certificate were also put in evidence.
The records of the Washington University Medical Clinic disclosed that the insured first appeared there for treatment on December 19, 1944, and the condition for which he was treated was diagnosed as latent syphilis. The date of this first call preceded the issuance of the policy of insurance which is dated May 4, 1945. In June of 1945 the clinic records note an enlarged heart and the following records disclose *814 that the insured made repeated visits to the clinic up to April 9, 1948. From the date of his original application for insurance and the date of the first application for reinstatement of the policy he was treated for heart disease at the Washington University Clinic on many occasions and between the date of his first application for reinstatement (October 13, 1947) and the date of his second application (December 29, 1947) he was treated at the clinic seven times for the same ailment.
On April 18, 1948, he went to the Homer G. Phillips Hospital and the records of that institution show that he was treated for hypertension and heart disease up to April 29 of the same year when he was discharged as improved. He was again admitted to this hospital on May 29 and died on June 5, 1948, of "luetic heart disease with decompensation" according to the hospital records. The death certificate used the same words in stating the cause of death.
A Dr. Goldman testified on behalf of the defendant. He had never treated the insured but he explained the hospital records and concluded from their examination that Russell had died of heart disease which might have been either hypertensive or luetic.
The original application for the insurance signed by the insured and made a part of the policy was in evidence and contains the following waiver: "I expressly waive, on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder all provisions of law forbidding any physician or other person who has attended or examined me or who may hereafter attend or examine me, from disclosing any knowledge or information acquired thereby, and I hereby expressly authorize such physician or other person to make such disclosures."
The first point raised by this appeal is not clearly stated but the appellant apparently considers the death certificate incompetent evidence. No objection was made to its introduction and it is in all respects in proper form. Section 17, Vol. 2, p. 241, Laws of Mo.1947, Mo.R.S.A. § 9783.16, provides that such certificates shall be prima facie evidence of the facts stated in them and the certificate was competent evidence for the purpose of showing the fact and cause of death. Randolph v. Supreme Liberty Life Ins. Co., 359 Mo. 251, 221 S.W.2d 155.
It is also contended that the hospital records were erroneously admitted in evidence over an objection to them on the ground that they were privileged communications. The privilege extended to communications between physician and patient is statutory. Sec. 1895, R.S.Mo.1939, Mo.R.S.A. Sec. 1895. It may be waived by the patient calling the physician to testify regarding facts embraced within the statute and it may also be expressly waived by contract as in this case. Our Supreme Court stated in Epstein v. Pennsylvania Railroad Co., 250 Mo. 1, loc. cit. 21, 156 S.W. 699, 705, 48 L.R.A., N.S., 394, Ann.Cas. 1915A, 423, "The patient may waive the privilege by calling his physician as a witness; the insured may waive the privilege, in any subsequent action, by contract in the policy of insurance." See also Keller v. Home Life Ins. Co., 95 Mo.App. 627, 69 S.W. 612; Hicks v. Metropolitan Life Ins. Co., 196 Mo.App. 162, 190 S.W. 661; Cromeenes v. Sovereign Camp of Woodmen of the World, 205 Mo.App. 419, 224 S.W. 15.
It was admitted that the records introduced were the records of the Washington University Clinic and the Homer G. Phillips Hospital and since plaintiff's only objection was that the records were privileged communications they were properly allowed in evidence by the trial court, in view of the waiver contained in the insurance contract.
Hospital records, when they are required by law to be kept, are admissible in evidence as an exception to the hearsay rule. Galli v. Wells, 209 Mo.App. 460, 239 S.W. 894; Shaw v. American Insurance Union, Mo.App., 33 S.W.2d 1052; Smith v. Missouri Ins. Co., Mo.App., 60 S.W.2d 730; Hendricks v. National Life & Accident Ins. Co., Mo.App., 210 S.W.2d 706.
*815 Section 9777, R.S.Mo.1939, Mo.R.S.A. § 9777, was in force during the time all of the records under consideration here were made and it provided: "All superintendents or managers, or other persons in charge of hospitals, almshouses, lying-in or other institutions, public or private, to which persons resort for treatment of disease, confinement, or are committed by process of law, are hereby required to make a record of all the personal and statistical particulars relative to the inmates in their institutions at the date of approval of this article, that are required in the form of the certificate provided for by this article, as directed by the state registrar; and thereafter such record shall be, by them, made for all future inmates at the time of their admission. And in case of persons admitted or committed for medical treatment of disease, the physician in charge shall specify, for entry in the record, the nature of the disease, and where, in his opinion, it was contracted."
The records were kept by direction of the statute and were therefore admissible.
Passing to the question of the weight to be accorded such evidence, the courts of this state have held that they constitute prima facie evidence of the facts stated in them and conclusive evidence of those facts when there is nothing in evidence to controvert them. When oral testimony is presented, which brings into question the truth of the statements contained in the records, then such records are no more than competent evidence to be considered and weighed by the jury in arriving at their verdict. Shaw v. American Insurance Union, Mo.App., 33 S.W.2d 1052. Here we have nothing in contradiction of the facts stated in the records nor any evidence from which it could be concluded that the records were untrue.
The facts recorded by the hospitals were required by law to be recorded and for this reason they carry a presumption of verity that stands when uncontradicted by any evidence or valid inferences which could be drawn from evidence presented. Smith v. Missouri Ins. Co., Mo.App., 60 S.W.2d 730; White v. American Life & Accident Ins. Co. of St. Louis, Mo.App., 90 S.W.2d 118; Truitt v. National Life & Accident Ins. Co., 236 Mo.App. 1036, 161 S.W.2d 683; Hendricks v. National Life & Accident Ins. Co., Mo.App., 210 S.W.2d 706.
In 1948, after the records we are discussing here had been made, the statute under which they had been kept was repealed by the enactment of the Uniform Vital Statistics Act, Laws of Mo.1947, Vol. 2, p. 237, Mo.R.S.A. § 9783.1 et seq. This act does not, however, affect the admissibility or the weight to be accorded records kept under the former statute. It will be noted that neither statute touches upon the subject of such records as evidence but merely requires the records to be kept, and as we have stated before it is the fact that such records are kept as provided by law that makes them admissible. We are not, therefore, here concerned with the meaning of the new act as it relates to such records. It may also be noted that still another statute, Laws of Mo.1949, p. 275, S.B. No. 212, Mo.R.S.A. § 1952.1 et seq., enacted after the trial of the case below, may hereafter have some bearing upon the admissibility of such records.
It is also urged that it was error to permit Dr. Goldman to testify. The only evidence that he gave was in explanation of the records that had been introduced in evidence and since they were properly introduced his testimony was admissible to explain them.
For the reasons stated it is the recommendation of the Commissioner that the judgment of the trial court be affirmed.
PER CURIAM.
The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.
The judgment of the circuit court is accordingly affirmed.
ANDERSON, P. J., and HUGHES and McCULLEN, JJ., concur.