Sᴇʟʟɪᴇ Tʀᴜɪᴛᴛ, Rᴇꜱᴘᴏɴᴅᴇɴᴛ, ᴠ. Tʜᴇ Nᴀᴛɪᴏɴᴀʟ Lɪꜰᴇ ᴀɴᴅ Aᴄᴄɪᴅᴇɴᴛ Iɴꜱᴜʀᴀɴᴄᴇ Cᴏᴍᴘᴀɴʏ, ᴀ Cᴏʀᴘᴏʀᴀᴛɪᴏɴ, Aᴘᴘᴇʟʟᴀɴᴛ.—161 S. W. (2d) 683.

Kansas City Court of Appeals.    May 4, 1942.

*McAllister, Humphrey & Broaddus* and *C. F. Douglass* for appellant.

*James D. Pouncey* for respondent.

BLAND, J.—This is an action on a life insurance policy in the sum of $200, issued by the defendant to Mamie Truitt, on November 27, 1939, in favor of the plaintiff, as beneficiary. She died on March 14, 1940. There was a verdict and judgment in favor of plaintiff in the sum of $200, plus 10% or $20, and $250 attorney's fees as penalties on account of an alleged vexatious refusal to pay the amount of the policy on the part of the defendant. Defendant has appealed.

The case was filed before a Justice and there was no pleading filed in the case on the part of the defendant. However, the case was defended in the Circuit Court under a provision of the policy providing that ''no obligation is assumed by the company prior to the

date hereof and unless on said date insured is alive and in sound health.'' In this connection, it is insisted that, at the time of the issuance of the policy, plaintiff was suffering from cancer of the cervix, which was unknown to the defendant and that, consequently, she was not in sound health at that time. There was no medical examination made of insured at or before the time of the issuance of the policy.

The only evidence that plaintiff introduced as to the cause of the death of the insured was that contained in the death certificate, reciting that the immediate cause of death was lobar pneumonia.

Defendant introduced the hospital records of Hospital No. Two, in Kansas City, which disclose that insured was treated for cancer there as far back as 1937; that she was in the hospital on May 12, 1939, and at that time she had cancer of the cervix; that on January 4, 1940, she was again in the hospital and at that time there was a hard crater which had replaced the cervix and that cancer was very definitely fixed in the pelvix in all directions; that the uterus was enlarged; that the crater was 5½ Cm. in diameter and extended into the vaginal wall; that the cancer was treated by X-ray and radium.

Insured was admitted to the hospital again on March 9, 1940, which was a few days before her death therein. At that time she was in a semi-comatose condition. On her admission her condition was diagnosed as carcimona of the cervix. The hospital records also showed the following: ''Diagnosis (Final): List diagnoses in order of their importance, Principal Diagnosis first. Carcinoma of Cervix. Cause of death Lobar Pneumonia. Condition on discharge—Deceased. Date of discharge 3-14-40.''

The physical examination of the deceased during the time that she was in the hospital on this last occasion shows: ''Head—N Mouth Herpes over lips and mucous membrane. Neck—N. Chest asculation compressed breathing over both apices. Moist rales at both lung fields. Breast atrophied. Abdomen no distention but marked tenderness in lower pelvis. No masses felt. Genitilia: Cervix eroded away. Remaining cervical tissue is firm in consistency and has a moth eaten appearance, few blood clots present. Extremities emaciated. Impression. (1) Proven case of carcinoma of the cervix (2) Bordering uremia, (3) Lobar Pneumonia.''

Defendant introduced the proofs of death furnished it by plaintiff, which show that the cause of the death of the insured was lobar pneumonia and that she was afflicted at the time of her death with carcinoma of the cervix.

No physician testified save Dr. Casebolt, a witness for defendant. This witness did not see insured during her lifetime, but examined the hospital records after her death. He testified that these records disclose that the immediate cause of the death of insured was cancer of the cervix and that the terminal cause was pneumonia; that under

the law the death certificate should have so stated but that the "full information was not put on" the death certificate; that cancer is a slow progressive disease; that the condition of insured's cancer at the time of her death showed that it was in an advanced stage and had existed for three or four years; that she could have been in sound health at the time the policy was written; that the primary cause of her death was cancer; that about 90% of chronic diseases terminate in pneumonia.

Defendant's evidence showed that it did not know that insured had cancer until the proofs of death were furnished it by plaintiff; that at that time it tendered to plaintiff all of the premiums that had been paid upon the policy and kept the tender good.

Defendant insists that its instruction in the nature of a demurrer to the evidence should have been given for the reason that insured was not in sound health at the time the policy was issued. The burden of showing that the death of insured was caused or contributed to by cancer was upon the defendant. [Wilson v. K. C. Life Ins. Co., 128 S. W. (2d) 319.]

It is well settled that a provision of a policy that it should be void unless insured is in sound health on the date it is issued are matters of representation, only, under section 5843, Revised Statutes Missouri, 1939. Under the provisions of this section, unless it appears that at the time of the issuance and delivery of the policy that insured was afflicted with a disease or diseases which caused or contributed to her death, defendant cannot defeat recovery upon the theory of misrepresentations and, whether or not such was the fact, is a question for the jury, unless it be foreclosed by an admission of the plaintiff wholly unexplained or uncontradicted by other evidence. [Hodges v. American Nat'l Ins. Co., 6 S. W. (2d) 72, 76.] This rule is modified when hospital records are involved to the extent that such records are conclusive as to the facts which they contain unless they are contradicted or impeached. In other words, they are prima facie evidence of the facts recited and unless the records are disputed or their authenticity questioned, the jury cannot disbelieve them. [Smith v. Mo. Ins. Co., 60 S. W. (2d) 730, 732.] The hospital records were not disputed or questioned by plaintiff and there is no evidence to dispute their contents.

There was no admission made by the plaintiff in the proofs of death, or otherwise, that the cancer caused or contributed to the death of insured. While the proofs of death that he furnished defendant showed that she was suffering from cancer at the time of her death, the cause of her death was stated as lobar pneumonia. Dr. Casebolt, himself, admitted that one may have a chronic disease of long standing and, yet, die of some other ailment.

While the hospital records showed that insured was suffering from an advanced case of cancer of the cervix at the time of her death, they

do not state that such cancer caused or contributed to her death but state, positively, that the cause of her death was lobar pneumonia. Consequently, plaintiff was entitled to go to the jury unless he is bound by the testimony of the defendant's witness, Casebolt. Casebolt was not plaintiff's witness and he is not bound by an interpretation the doctor made of the hospital records, or, by his opinion concerning the medical case of the insured. [Waters v. Bankers Life Ins. Ass'n, 50 S. W. (2d) 183; Wilson v. K. C. Life Ins. Co., *supra*.]

However, defendant insists that its instruction in the nature of a demurrer to the evdence should have been given for the reason that plaintiff had assigned his cause of action prior to the bringing of this suit. In this connection plaintiff testified that the undertakers made it a condition to the burial of the body of the insured that plaintiff execute the assignment in question. The assignment recites that plaintiff assigned to "Maxwell or Funeral Directors Exchange . . . the sum of Two Hundred and No/100 Dollars ($200.00) which is to be paid from the benefits of the above mentioned policy or certificate, the consideration for the assignment of this amount being funeral services rendered in the burial of said deceased by the said undertaker;" that plaintiff authorized defendant to make payment of the above named amount of money to the assignee, and that "I (we) hereby appoint E. Maxwell or any one of them, our attorney-in-fact to act for us with full power to make collection of, compromise, settle and receipt for the proceeds of said policy of insurance or certificate in our names or otherwise, as fully to all intents and purposes as we ourselves could do, with full power of substitution and revocation, hereby ratifying and confirming all that our said attorneys or their substitutes may do or cause to be done by virtue hereof."

The assignment merely creates a beneficial interest in the assignee in the money in question, plaintiff retaining the legal title. It was not an assignment of the cause of action. Plaintiff, at all times, retained the policy and had it in his possession at the time suit was filed, and there is no claim on the part of the defendant that it paid anyone the $200 in question. Plaintiff is the real party in interest and entitled to maintain this suit. [Keeley v. Indemnity Co. of America, 7 S. W. (2d) 434.]

We have examined Metropolitan Paving Co. v. Brown-Crummer Inv. Co., 274 S. W. 815, and Buffington v. South Missouri Land Co., 25 Mo. App. 492, cited by defendant, and find them not in point.

Defendant complains of the action of the court in giving plaintiff's instruction submitting to the jury the issue of the penalty of 10% and attorney's fees. We think this point should be sustained.

"An insurance company's right to resist payment upon one of its policies cannot be determined by the facts as found by the jury, but must be determined by the facts as they reasonably appeared to it

before the trial. It has the right to refuse payment and to defend a suit with all the weapons at its command, so long as it has reasonable ground to believe its defense is meritorious. It is only when it persists in its refusal to pay the policy after it is aware that it has no meritorious defense that it becomes subject to penalties for vexatious delay." [The State ex rel. Continental Life Ins. Company of Kansas City v. William H. Allen et al., 303 Mo. 608, 621.]

The question of vexatious refusal to pay should not have been submitted to the jury unless there was some evidence in the case either that defendant was not making, in good faith, its defense concerning insured's cancer, or, that it knew that the proof to the contrary of its asserted defense was so strong that it could not reasonably have expected a finding on the point in its favor. [State ex rel. v. Allen et al., *supra*, 621.]

There is nothing in the record to indicate that defendant was not in good faith in refusing to pay the claim. It did not know that insured suffered from the disease of cancer until after her death. The hospital records disclosed that the cancer was in an advanced stage at that time and it had expert medical advice of a man who was admitted at the trial to be a reputable physician—"one of the best in the city," to the effect that insured died from cancer, or at least it contributed to her death.

If plaintiff will within ten days remit the sum of $270 from the face of the judgment, it will be affirmed; otherwise, the judgment will be reversed and the cause remanded. All concur.