LEONARD E. HENDRICKS, RESPONDENT, v. THE NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY, A CORPORATION, APPELLANT.— 210 S. W. 2d 706.

Kansas City Court of Appeals. Opinion delivered April 5, 1948.

558

*Keyes & Bushman* for appellant.

*Lauf & Bond, H. P. Lauf* and *John O. Bond* for respondent.

SPERRY, C.—Leonard E. Hendricks, plaintiff, sued The National Life and Accident Insurance Company, defendant, seeking to collect the proceeds of a policy of insurance issued by defendant on the life of Cecile Hendricks, deceased wife of plaintiff. Trial to a jury resulted in verdict and judgment for plaintiff. Defendant appeals.

The policy was issued on December 17, 1945, and provided that it should become effective only upon condition that insured was then in sound health. Insured died on January 9, 1946, of pulmonary tuberculosis and pneumonia. Defendant contends that the evidence conclusively established the fact that insured was afflicted with tuberculosis, from which she died, at the time the policy was issued

and that a verdict should have been directed in its favor on motion ·filed.

Plaintiff made a prima facie case by introducing the policy and establishing the identity of plaintiff as beneficiary, defendant having admitted the death of insured on January 9, 1946.

Defendant introduced lay and medical evidence tending to prove that insured had been, for some years prior to her death, addicted· to the excessive use of alcohol; that she had been under weight, complained of weakness and dizziness, was pale, and had a poor appetite. An official of defendant testified to the effect that defendant required submission of proofs of loss as a condition to payment of losses under its policies and that, included therein, was a statement of the physician last attending insured. It also introduced, without objection, the statement of Dr. H. Kanagawa, the physician last attending insured, made on a form furnished by defendant for such purpose. Dr. Kanagawa therein stated that insured died of bilateral pneumonia and pulmonary tuberculosis, the latter disease having a duration of five days, to his knowledge, and of six months according to the history given. Defendant also introduced the records of the hospital where insured died. It was there recited that insured was admitted on January 1, 1946, and died on January 9, 1946; that she slept and ate poorly, coughed a great deal, expectorated a greenish yellow phlegm, and suffered night sweats; that there was a history of pulmonary tuberculosis of possibly several years, and, definitely, of six months duration. On the X-ray report, included in said records, dated January 2, 1946, it was stated that insured suffered from advanced pulmonary tuberculosis with cavitation.

Dr. Kanagawa testified, on behalf of defendant, that he professionally examined insured during the month of November, 1945, and that she was then weak, anaemic, and undernourished; that she coughed persistently and complained of night sweats; that he suspected the existence of pulmonary tuberculosis and advised that X-ray pictures be taken; that during the latter part of December he again saw her, professionally, and found her condition worse and that he advised that she enter a hospital; that he advised plaintiff of his belief that she had tuberculosis; that X-rays were taken; that they disclosed cavitation of the lungs; that sputum tests disclosed the presence of tubercular baccilli; that in his opinion she suffered from tuberculosis prior to November 30, 1945; and that said disease contributed to cause her death. Defendant here rested.

Plaintiff, in rebuttal, testified to the effect that insured had a cold in November; that prior thereto she enjoyed good health; that during their several years of married life she did her own housework, cooking, washing, and caring for their three children; that she carried in coal and water; that she did not cough; that she and witness had never discussed the matter of her having tuberculosis; and that he did not

know that she suffered from tuberculosis when she went to the hospital, Dr. Kanagawa told him that she then had pneumonia.

Mrs. Griffin stated that she was in the home of insured at least twice a week, or more often, during the last year of her life; that insured was always neat and clean, kept the house clean; that the children were kept neat and clean; that she saw her carry in water on one occasion; that she never saw her in an intoxicated condition.

Witness Helming testified to the effect that he was in insured's home frequently during the last year of her life; that he was there on Christmas day prior to her last illness; that she was up and around and had prepared a turkey dinner for the family; that the house was clean; that she appeared to be in good health; that he never heard her cough.

Dr. Bruce testified to the effect that he delivered insured of a baby February 20, 1945; that she did not have tuberculosis at that time; that he had not seen her since February 22, 1945; that one can have cavitation of the lungs caused by Friedlander's Baccilli, usually following influenza; that such cavitations are almost impossible to distinguish from those caused by tubercular baccilli; that cavitation in insured's lungs could have been caused by Friedlander's Baccilli; that he had examined the X-ray pictures and had observed cavities in insured's lungs; that the existence of cavitation usually indicates an old case of tuberculosis.

Plaintiff then rested. Defendant moved for a directed verdict. The next day plaintiff asked leave to reopen the case for the reception of further evidence, which leave was granted over the vigorous objections of defendant. The latter court had the power, within its sound discretion, to reopen the case. Buck v. Buck, 267 Mo. 644, 1. c. 663; Blomeyer v. Willey, 151 S. W. 2d, 535, 1. c. 536. It does not appear that the court abused its discretion in this respect.

After reopening, plaintiff testified to the effect that he signed and filed defendant's Exhibit C, the same being a claim under this policy; that he did not furnish, nor did he tell anyone else to furnish defendant's Exhibits B and D, they being respectively, statement of physician attending insured during her last illness, and death certificate as certified by the Central Bureau of Vital Statistics of Missouri, in which instruments it is recited that a contributing cause of death was pulmonary tuberculosis of five days, personally known by physician, and of six months' duration from history given; and that the first he knew that insured suffered from tuberculosis was January 6.

Dr. Bruce testified to the effect that he had examined the hospital records and that from them and his own examination of insured he believed insured did not have tuberculosis on December 17, 1945; that he thought she developed "galloping consumption" and died therefrom within a few days thereafter. He further testified to the effect that generally X-ray evidence of cavitation indicates a chronic,

or old case, but that such is not always true; that many times a doctor will send a patient to hospital under a diagnosis of pneumonia, only to learn from sputum tests that it is tuberculosis, and be surprised thereby; that sometimes such cases only live for a week, sometimes for three weeks; that such cases are called acute tuberculosis, or galloping consumption; that he believed that was the disease of which insured died; that patients had been known to die within six days after developing galloping consumption, but that such cases were rare; and that people with chronic tuberculosis sometimes work and don't know that they have it.

It is well settled that a beneficiary may not recover on a policy of life insurance containing a provision to the effect that it is ineffective if insured is not in sound health upon date of issue, where it is shown that such insured was not in sound health at the time of issuance of the policy and thereafter died of the disease from which she then suffered. Kirk v. Metropolitan Life Insurance Company, 336 Mo. 765, 81 S. W. 2d, 333.

All of the medical testimony in the case, as well as the documentary evidence, is to the effect that insured died, on January 9, 1946, of pulmonary tuberculosis. There is no evidence, of any character, to the contrary. The issue is: "Was insured afflicted with such disease on December 17, 1945?" Defendant asserts that she was, and it has the burden of proving its defense. Ordinarily the decision would rest solely with the jury; but defendant contends that, under all of the evidence adduced in the case, the documentary evidence supporting its defense became, and is, conclusive.

The physician's statement and hospital records were introduced in evidence without objection, but plaintiff contends that the physician's statement, for various reasons assigned, is not binding on him. We think it unnecessary to rule that point because the hospital records contained the same information as did the physician's statement and, in addition, contained the X-ray report showing cavitation of the lungs. These records constituted prima facie evidence of the facts stated therein and, unless contradicted or impeached, they become conclusive. Smith v. Missouri Insurance Company, 60 S. W. 2d, 730, 1. c. 732; White v. American Life & Accident Insurance Company, 90 S. W. 2d, 118 1. c. 119; Truitt v. National Life & Accident Insurance Company, 161 S. W. 2d, 683, 1. c. 686; Shaw v. American Insurance Union, 33 S. W. 2d, 1. c. 1054, 1055; Kazee v. Kansas City Life Insurance Company, 217 S. W. 339, 1. c. 341. In the Smith case, supra, we held that the proofs of death were not conclusive; but we held that since the hospital records were unimpeached and uncontradicted by any substantial evidence they conclusively established the affirmative defense offered by insurer.

The hospital records in the case at bar disclose that deceased had probably suffered from pulmonary tuberculosis "possibly some years

duration—definitely six months.  Loss of weight—night sweats —&
poor appetite.''  The X-ray report recited: ''Advanced pulmonary tuberculosis with cavitation.''

Plaintiff contends that there is substantial evidence tending to contradict the above statements.  Such evidence, he contends, consists of the testimony of lay witnesses and of the medical testimony of Dr. Bruce.

The testimony of lay witnesses may constitute substantial evidence of the condition of health of an insured.  Rush v. Metropolitan Life Insurance Company, 63 S. W. 2d, 453, l. c. 455; Ryan v. Metropolitan Life Insurance Company, 30 S. W. 2d, 190, l. c. 195.  The lay testimony in this case·is not of that character.  It is to the effect that insured appeared to be in good health; that she performed all of her household duties without any help until several days after December 17, 1945; and that she did not cough; but there is no evidence tending to prove that one suffering from advanced pulmonary tuberculosis ''necessarily appears to be in bad health or unable to perform that character of work, * * * ; and certainly courts and juries cannot take notice of such facts.''  Smith v. Missouri Insurance Company,·supra; Clark v. National Life & Accident Insurance Company, supra, l. c.. 945; Kirk v. Metropolitan Life Insurance Company, supra, l. c. 780; Smiley v. John Hancock Mutual Life Insurance Company of Boston, Mass., 52 S. W. 2d, 12, l. c. 15.  We have found no case where it has been held that documentary evidence of the existence of a disease similar to that of tuberculosis has been successfully challenged on the testimony of lay witnesses alone; but we do not hold that such evidence, under some conditions, may not be sufficient to contradict documentary evidence to the contrary.

Plaintiff contends that the testimony of Dr. Bruce also constitutes substantial evidence tending to contradict the facts stated in the hospital records.  Dr. Bruce gave it as his opinion that insured died of acute pulmonary tuberculosis (galloping consumption), but he did not state the duration of the disease.  He stated that he based his opinion upon his own examination of insured, made some eleven months prior to the issuance of the policy, and upon the hospital records.  Insured was free from tuberculosis February 20, 1945; but it is agreed by everyone that she did thereafter contract that disease and died thereof.  The question is whether or not she had it on December 17.  The result of an examination of February 20 could throw no light on that question, in view of the undisputed fact that she died from that disease eleven months later.

It is difficult to perceive how Dr. Bruce could form the opinion that he did form, based upon the hospital records, such opinion being entirely contrary to the positive facts shown by those records.  He said that cavitation *usually* indicated a chronic case; and cavitation was present.  The records recited the existence of the disease for a definite

period of six months. It is not contended that any *fact* in evidence tends to contradict this recital. All of the *facts* appear to support it. Dr. Bruce did not call attention to any fact or statement in the hospital records that tended to support the conclusion that he reached from a study of the records; and we find no such statement therein. Whether or not the opinion of a medical witness is based on sufficient facts to sustain it, is a question of law. Hall v. Mercantile Trust Company, 59 S. W. 2d, 664 1. c. 672. We hold that there were not sufficient facts in evidence upon which Dr. Bruce, who had not seen insured for nearly a year prior to her death, could rest an opinion that she did not suffer from tuberculosis on December 17, 1945, some three weeks prior to her death. His opinion was speculative and of no probative value. It did not constitute substantial evidence that deceased did not suffer from tuberculosis at the time the policy was issued. The documentary evidence tending to prove that fact having remained unimpeached and uncontradicted became, and is, final and conclusive.

The judgment should be reversed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of Sperry, C., is adopted as the opinion of the court. The judgment is reversed. All concur.