MABEL E. SUITER, ADMINISTRATRIX OF THE ESTATE OF JAMES C. SUITER, DECEASED, APPELLANT, v. MISSOURI INSURANCE COMPANY, A CORPORATION, RESPONDENT.—229 SW (2) 707.

Springfield Court of Appeals.   April 17, 1950.

348

*Joe W. Collins* for Appellant, Mabel E. Suiter, Administratrix.

*T. Bryant Johnson, Jones, Hocker, Gladney & Grand, Lon Hocker, James C. Jones, Jr.,* for Respondent.

350

BLAIR, J.—This is a suit for $3000, filed in the Circuit Court of St. Clair County, on November 17, 1948, by Mabel E. Suiter, Administratrix of the estate of James C. Suiter, Deceased, against the Missouri Insurance Company, for the benefit of the Union State Bank of Clinton, Missouri, upon a policy of industrial insurance on the life of James C. Suiter, to protect that bank in part for a loan by said bank to said James C. Suiter. There was a third party defendant, but such defendant was dismissed on June 20, 1949, and does not further appeal in this opinion.

On the trial of the case on June 6, 1949, the jury returned a verdict for plaintiff, (now appellant) in the sum of $3000, together with interest, and, on that date, the trial court rendered judgment for plaintiff in accordance with such verdict. On June 15, 1949, the defendant (now respondent) filed its motion for a directed verdict against plaintiff or, in the alternative, for a new trial.

On September 3, 1949, the trial court sustained that part of defendant's motion for a directed verdict, on grounds 1, 2 and 3, which were as follows:

"1. The evidence conclusively showed, by the terms of the master policy and certificate, any insurance of this defendant on the life of James C. Suiter did not become effective unless James C. Suiter was in sound health at the time the certificate was issued to him.

"2. The evidence conclusively showed James C. Suiter, at the time the certificate was issued to him, was not in sound health and was afflicted with the disease from which he died.

"3. The evidence conclusively showed there was no insurance of this defendant on the life of James C. Suiter in effect at the time he died."

The grounds set out in the alternative motion for a new trial need not be set out, since the trial court rendered judgment and did not

grant a new trial. Plaintiff appealed to this Court, and the case is now before us for decision.

The action was on an industrial insurance policy for only three months, to protect the Clinton Bank on a loan made to deceased. The usual examination by a physician as to the good health of insured, was not required. Deceased simply certified that he was then in sound health and under sixty years of age. The policy of insurance was issued February 3, 1948, and deceased's death occurred on February 20, 1948.

Plaintiff makes three assignments of error, and cites cases in purported support thereof. The first assignment is as follows:

"The burden of proving that the defendant was not in sound health was upon the defendant Missouri Insurance Company and the jury had a right to believe or disbelieve the testimony offered by defendant on this point."

As that proposition is not seriously disputed, we will not discuss the cases cited by plaintiff in purported support thereof.

The second point of error in plaintiff's brief, is as follows:

"The court erred in sustaining defendant Missouri Insurance Company's motion for a directed verdict at the close of all the evidence in the case and setting aside the verdict after the jury had found a verdict in favor of plaintiff, because under the pleadings and proof the question of sound health was by the jury resolved in favor of plaintiff and was not a question for the court to pass upon."

In support thereof, plaintiff first cites Missouri Statutes Annotated, Vol. 15, Section 5843, page 406. This section of the statute is as follows:

"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, *and whether it so contributed in any case shall be a question for the jury.*" (Emphasis mine.)

Plaintiff cites Christian v. Connecticut Mutual Life Ins. Co. 45 S. W. 268, 143 Mo. 460. In discussing the above section, which was then Section 5849 R. S. 1889, Judge Sherwood of the Missouri Supreme Court, among other things, said:

"Under the provisions of the quoted section it was a matter to be left to the jury whether the misrepresentation contributed to the event or contingency upon which the policy was to become due and payable."

We think it unnecessary to consider the question raised in the third assignment of error set out in plaintiff's brief, as that clearly would not authorize a judgment for defendant.

Defendant Insurance Company (respondent here) has made a longer statement of facts than has plaintiff (appellant), and makes several propositions with cases purporting to support such propositions. Defendant first says:

"Where the policy is conditioned upon the sound health of the applicant the insurance never became effective when the applicant died from a disease with which he was afflicted when he applied for the policy," and cites several cases in purported support of such statement. Such statement could not well be denied, if the cases cited held that. Let us consider those cases.

The first case cited by defendant is Kirk v. Metropolitan Life Ins. Co. 336 No. 765, 81 S. W. (2d) 333. That is a very long case, and it would seem that the reversal of the trial court in that case was justified largely by the evidence furnished by the proofs of death, which stated that the insured had suffered from tuberculosis before the policy was issued. Commissioner Cooley, in that case, said:

"This brings us to the question of whether or not there is any evidence to explain or contradict the statements contained in the proofs and thus obviate their otherwise conclusive effect."

And again, Commissioner Cooley said:

"Let it be assumed—and it may be inferred from their testimony—that these ladies had no knowledge of the existence of tuberculosis on July 7. It does not follow from such lack of knowledge on the part of these lay witnesses that the disease did not exist even at that time, and they did not testify as to insured's condition or appearance or as to their knowledge of her condition on July 23. In their affidavits submitted as parts of the proofs of loss, they said insured's last illness, tuberculosis, had existed for five months prior to her death, which would be from July 11. Their testimony does not explain or contradict that statement. There is no evidence in the case as to whether or not the existence of the disease in its earlier stages would produce symptoms observable and recognizable by a lay witness merely from observation of the afflicted person."

That case is different from the case at bar, in that there was here testimony that, up to the day before he went to the hospital, Suiter, the insured, appeared to be in his usual health and went about his ordinary business. In the absence of statements made in the present case in the proofs of death that the insured was not in sound health, when the policy of insurance was issued, it is difficult to justify a directed verdict and judgment for the insurer, when the language of Section 5843 R. S. A., above quoted, is considered. Before a judgment could be rendered for the insurer, in the face of the jury's verdict, the trial court would be required to find that the alleged unsound condition of the health of the insured, when the policy was issued, was the cause of insured's death. The jury did not so find.

Defendant next cites Fields v. Metropolitan Life Ins. Co. (Mo. App.) 119 S. W. (2d) 463, by the St. Louis Court of Appeals. In that case, the verdict and judgment were in favor of those entitled to receive the insurance, and the judgment of the trial court so holding was affirmed, on the wording of the policy, regardless of whether or not insured was actually in sound health when the policy was issued. Consideration of that case in no wise convicts the trial court of error in this case.

Defendant cites Hendricks v. National Life & Accident Insurance Co. (Mo. App.) 210 S. W. (2d) 706, by the Kansas City Court of Appeals. In that case the policy was issued December 17, 1945, and insured died January 9, 1946. Plaintiff had judgment in the trial court and insurer appealed, and the judgment was reversed. There was some contradictory evidence in that case; but not as to the facts in general. Sperry, Commissioner, there said:

"Defendant introduced lay and medical evidence tending to prove that insured had been, for some years prior to her death, addicted to the excessive use of alcohol; that she had been underweight, complained of weakness and dizziness, was pale, and had a poor appetite. An official of defendant testified to the effect that defendant required submission of proofs of loss as a condition to payment of losses under its policies and that, included therein, was a statement of the physician last attending insured. It also introduced, without objection, the statement of Dr. H. Kanagawa, the physician last attending insured, made on a form furnished by defendant for such purpose. Dr. Kanagawa therein stated that insured died of bilateral pneumonia and pulmonary tuberculosis, the latter disease having a duration of five days, to his knowledge, and of six months according to the history given."

Judge Sperry further said:

"All of the medical testimony in the case, as well as the documentary evidence, is to the effect that insured died, on January 9, 1946, of pulmonary tuberculosis."

"There is no evidence of any character, to the contrary. The issue is: 'Was insured afflicted with such disease on December 17, 1945?' Defendant asserts that she was, and it has the burden of proving its defense. Ordinarily the decision would rest solely with the jury; but defendant contends that, under all of the evidence adduced in the case, the documentary evidence supporting its defense became, and is, conclusive."

The court evidently did not regard the testimony of lay witnesses as being contradictory of the documentary evidence in the case.

Defendant cites Farage v. John Hancock Mutual Life Ins. Co. 229 Mo. App. 698, 81 S. W. (2d) 344, by the Kansas City Court of Appeals. In that case there was no doubt that insured was not in good health when the policy of insurance was issued, for he was in the hospital at the time, and there was no waiver on the part of the insurance company.

Defendant next cites Peebles v. Missouri Insurance Co. (Mo. App.), decided by the St. Louis Court of Appeals, 226 S. W. (2d) 363.

In that case, the insured, a woman, died five days after the industrial policy of insurance was issued. The insured's husband had made contrary admission in the proofs of death.

In discussing the alleged subsequent statement of the attending physician, Judge Hughes said:

"Plaintiff seeks to escape the binding force of the admission in his proof of death on the theory that the physician's statement, which is a part of the proof of death, states the cause of death to have been bronchial asthma and chronic myocarditis, and that the oral testimony shows that the physician told a neighbor, who was present when the insured died, that death was caused by 'a cerebral hemorrhage.' The physician denied that he made such statement, but plaintiff contends that this oral evidence was an explanation or contradiction of the physician's statement in the proof of death. And true it might have been a contradiction of the statement in the proof of death that one of the diseases which caused the death was myocarditis. But it would in no manner be a contradiction of plaintiff's statement or of the physician's statement in the proof of death that the insured had bronchial asthma for two years."

Respondent contends that, "Medical testimony and documentary evidence that insured was afflicted with a particular disease are not contradicted by the testimony of lay witnesses that the insured appeared to be in good health," and cites seven cases in purported support of that proposition.

This assignment is particularly interesting to us, if the cases so hold, because plaintiff had testified that her deceased husband, although previously in the hospital, and under the care of a doctor at one time before, had recovered and shortly before his death, "went right ahead with his work, his farm work and driving the school bus. We milked a bunch of cows; he went right ahead and seemed to be in as good health.

"Q. He seemed all right to you? A. Yes, he did."

In the case of Waterous v. Columbian National Life Ins. Co., 353 Mo. 1093, 186 S. W. (2d) 456, the appeal was by the assignee of the insured. The jury found for the insurance company, and the judgment was reversed by the Supreme Court. Tipton, J., said:

"Appellant's evidence showed that the insured was in good health prior to the accidental bumping of his head. The respondent had testimony that might tend to show insured's paralysis was due to disease. It follows that the respondent's demurrer to the evidence was properly overruled."

The reversal and remanding of that case were due to the improper admission in evidence of exhibits and not to insufficiency of the proof of accidental injury.

The case of Kirk v. Metropolitan Life Ins. Co. has already been discussed by us. That case was ruled entirely on the proofs of death made by the plaintiff, contrary to the lay testimony in the case.

In Frank v. Atlanta Life Ins. Co. (Mo. App.) 211 S. W. (2d) 940, by the St. Louis Court of Appeals, it is held that the medical and documentary evidence are not contradicted by the testimony of lay

witnesses. There were proofs of death made by plaintiff in that case. Anderson, J., there said:

"Nor was the testimony of plaintiff that his wife did not have heart trouble sufficient to overcome the prima facie defense made by the certificate of death. His testimony amounted to no more than an opinion expressed by a person not shown to have had any knowledge whatsoever of medical science. The opinion could be based only on observation of the insured's appearance of good health. But, it does not appear that one suffering from heart disease necessarily presents an appearance of being ill to the ordinary layman. Plaintiff's testimony, therefore, did not contradict the statement. as to the cause of death contained in the death certificate based on a professional diagnosis."

The case of Hendricks v. National Life & Accident Ins. Co. (Mo. App.) 210 S. W. 706, by the Kansas City Court of Appeals, has heretofore been discussed. Commissioner Sperry there said:

"We have found no case where it has been held that documentary evidence of the existence of a disease similar to that of tuberculosis has been successfully challenged on the testimony of lay witnesses alone; but we do not hold that such evidence, under some conditions, may not be sufficient to contradict documentary evidence to the contrary."

In Bailey v. American Life & Accident Ins. Co. (Mo. App.) 96 S. W. (2d) 903, by the St. Louis Court of Appeals, Commissioner Bennick said:

"It is indeed well settled that admissions against interest contained in proofs of death furnished by a beneficiary will serve to preclude a recovery on the policy if the recitals in the proofs purport to show grounds for an avoidance of the policy and are permitted to go unexplained, unchallenged, and unaccounted for. However, such statements or recitals are after all but prima facie only, and are consequently not to be taken as conclusive if other facts and circumstances appear in the case explanatory of or contradictory to the admissions."

Defendant cites Smith v. Missouri Insurance Co. (Mo. App.) 60 S. W. (2d) 730, by the Kansas City Court of Appeals, Bland, J., there said:

"While such records (hospital) are not ordinarily conclusive as to the facts which they contain, they are conclusive, unless they are contradicted or impeached. In other words, they are prima facie evidence of the facts recited, St. Louis Gas-Light Co. v. City of St. Louis, 11 Mo. App. 55, 75, and, unless they are disputed or their authenticity questioned the jury cannot disbelieve them." (Word in parentheses mine.)

The last case cited by defendant on this proposition is Clark v. National Life and Accident Co. (Mo. App.) 288 S. W. 944, by the Kansas City Court of Appeals. Judge Bland there said:

"The provision in the policy that, unless insured was of sound health on the date of the issuance of the policy the insurance should be void, is governed by section 6142, R. S. 1919, concerning the effect of misrepresentations, so that such provision is unavailing to defeat the insurance, unless it appear that, at the time of the delivery of the policy, the insured was afflicted with a disease which caused or contributed to cause her death. Whether or not this was a fact was a question for the jury, unless it is disclosed by the admission of plaintiff, which is wholly unexplained or uncontradicted by any other evidence."

A careful search of the transcript, including exhibits, does not reveal that plaintiff ever signed proofs of death, stating that deceased

was suffering either from high blood pressure or Bright's Disease at the time defendant isued the policy of insurance, sued on in this case, and her testimony in that regard is not contradictory of the documentary evidence.

After a careful review of all of the cases cited, we have concluded that the trial court erred in entering judgment for defendant.

As there was no misrepresentation by plaintiff or insured as to the condition of insured's health, when the policy of insurance was issued, we need not consider the many cases on that point, cited by defendant.

We have not considered appellant's claim that defendant did not allege or prove that it would not have issued the policy of insurance had it known the condition of insured's health, and we do not think it at all necessary to consider defendant's claim in Point II of its brief, that it was not incumbent on it to so plead. Nor do we think it is at all necessary to consider Point III or Point IV of appellant's brief. Those points would probably be made if the trial court, in appropriate language, had acted upon dependant's alternative motion for a new trial.

After a long study of the multitude of cases cited by defendant, we have concluded that the trial court was not authorized under this record to render a judgment for defendant, in spite of the jury's verdict.

Plaintiff's statement that insured went about his ordinary duties in apparent good health shortly before he went to the hospital, which statement never seems to have been overthrown by any statement of hers, that her husband was not in sound health at the time the policy of insurance was issued, was not contradictory of the testimony of the attending physician and the nurses at the hospital, or even of the testimony of the many physicians, who had observed insured's health in bygone years. The jury, nine of them, had the right to believe plaintiff and to disbelieve all of the others, and the trial court had no right to enter a judgment for defendant and to disregard all of the many assignments of error set forth in the alternative motion for new trial.

No one can read this record without coming to the conclusion that defendant's motion for a new trial should have been considered and its motion for a directed verdict and judgment for defendant should have been overruled.

If nine men out of twelve jurors believed plaintiff, in the face of the overwhelming evidence for defendant, they had the right to do so. That did not give the trial court the right to enter judgment for defendant, no matter what he thought of plaintiff's proof or the conduct of her attorney during the trial. He might have sustained defendant's motion for a new trial, but did not do so.

Our conclusion is that the judgment of the trial court must be reversed and the cause remanded for a new trial.

It is so ordered.

*Vandeventer, P. J.,* concurs in result. *McDowell, J.,* concurs.