James BAUGH and Rosalie Baugh (Plaintiffs), Respondents,

v.

LIFE AND CASUALTY INSURANCE COMPANY OF TENNESSEE, a Corporation (Defendant), Appellant.

No. 29670.

St. Louis Court of Appeals.

Missouri.

Feb. 28, 1957.

Transferred to Supreme Court on Courts Own Motion March 8, 1957.

Louis J. Portner, Echeal T. Feinstein, St. Louis, for appellant.

Raymond J. Lahey, St. Louis, for respondents.

WOLFE, Commissioner.

This is an action on a life insurance policy, whereby the defendant insured the life of William L. Baugh in the sum of one thousand dollars. James Baugh and Rosalie Baugh, the plaintiffs, are the beneficiaries named in the policy. The trial resulted in a verdict and judgment for the plaintiffs and the defendant prosecutes this appeal.

In their petition the plaintiffs alleged that the policy was issued on April 6, 1953. It was alleged that the insured fully complied with all the terms and conditions of the policy and that on February 4, 1955, while the policy was in force, the insured died. There was a further allegation about the defendant's refusal to pay.

The defendant's answer admitted that the policy was issued and the premiums paid. The death of the insured was also admitted. By way of affirmative defense it was alleged that the insured had falsely represented that he was in sound health at the time that the policy was issued, and that the defendant relied upon the representations made, in issuing the policy. The answer also set up the defense that the policy limited the defendant's liability to a return of the premiums if the insured was not in sound health at the time that the policy was issued. This was followed by an allegation that the insured was suffering from heart disease at the time he applied for the policy and at the time it was issued.

The death of the insured having been admitted, the plaintiffs rested their case after introducing the policy in evidence. The policy contained the following clause:

"Incontestability—Within two years from date of issue of this Policy, the liability of the Company under same shall be limited to the return of premiums paid if the Insured was not in sound health on the date of issuance and delivery of this Policy. After this Policy shall have been in force during the lifetime of the Insured for two years from date of issue, it shall be incontestable except for non-payment of premium."

The defendant called as a witness the supervisor of the Medical Record Department of the St. Louis City Hospital. She identified the medical record of the insured and described the method of keeping the hospital records from which the medical record of the insured had been taken. The court admitted the record as records kept in the usual course of the business of the hospital, with the exception of one part which states: "Pt. states that at age 7 he had chicken pox and was told by a doctor he had a leaky heart."

The records disclose that the insured was first admitted to the hospital on March 18, 1954, at which time he gave a history of having had an acute onset of severe breathlessness the day before while driving from Washington, Missouri, to St. Louis. He had stopped en route to consult a physician and was given a shot and advised to enter a hospital. According to the record he had a "definitive cardiac vascular lesion denoted by an organic murmur". His ailment was diagnosed as "1 congenital aortic stenosis, 2 subacute bacterial endocarditis due to streptococcus viridans". He was discharged from the hospital on April 27, 1954, but was again admitted on August 10, 1954, and remained until August 26. During this second hospitalization his ailment was diagnosed as congenital aortic stenosis and subacute bacterial endocarditis. The insured again entered the hospital on February 3, 1955, and died the day following. A postmortem examination was made and gave as a "Primary Diagnosis Heart, endocarditis, healed, with arotic vegetation and stenosis Heart, hypertrophy (1180 grams) Heart,

myocarditis, healed Heart, subaortic stenosis (congenital)".

A physician was called by the defendant to examine the X-rays and explain the hospital record. In answer to a hypothetical question he said that from the X-rays he could tell that the heart was enlarged and from the notation "congenital stenosis" he would say that the stenosis was present from birth by a simple acceptance of the word "congenital". He was asked on cross-examination if he would change his opinion if he were informed that the insured had done very hard manual labor and he said that he would not.

The defendant sought to introduce in evidence the application for the policy, which was signed by the insured and dated March 20, 1953. It stated in part that the applicant never had a disease of the heart and declared that the statements made were true and that any misrepresentation would render the policy void, and that the policy should not be binding upon the company unless the applicant should upon its date be in sound health. There was an objection to the introduction of the application on the ground that the policy itself stated that it constituted the entire contract. The objection was sustained and the application was not permitted in evidence.

Plaintiff, Rosalie Baugh, the mother of the deceased, testified in rebuttal that her son had pneumonia when he was about eighteen months old but that after that he suffered no diseases except those ordinarily associated with childhood, such as mumps and chicken pox, and for these no doctor attended him. He was raised on a farm where he hoed, picked and plowed cotton, and drove a tractor. Later when they moved to the city he did factory work. He was troubled by occasional nose bleeding and was told by a specialist it was due to a crooked bone in his nose that should be corrected. That was in 1950, which was the last time he was troubled with it. He had never been treated for a heart ailment or told that he suffered from it until he entered the City Hospital in 1954. His health, with the exceptions stated, had been good and he was steadily employed.

The defendant moved for a directed verdict at the close of the entire case and it is contended that the court erred in refusing to direct a verdict for the defendant. The ground assigned for the alleged error is that the hosptial records, to the effect that the insured had congenital heart disease, were not impeached, and that the records are therefore conclusive. It is, of course, quite obvious that if the insured had congenital heart disease he was not in sound health at the time that the policy was issued to him.

The evidentiary value of hospital records has been discussed in numerous cases by the courts of appeals of this state, and we are cited to Toler v. Atlanta Life Ins. Co, Mo.App., 248 S.W.2d 53; Russell v. Missouri Ins. Co., Mo.App., 232 S.W.2d 812; and Berne v. Prudential Insurance Co. of America, 235 Mo.App. 178, 129 S.W.2d 92; all by this court.

The first of these, Toler v. Atlanta Life Ins. Co., had to do with a policy which contained a sound health clause to the same effect as the one we have under consideration. Slightly more than a month before the policy was issued the insured had filed claims for total disability with another insurer. In those claims his doctor gave as a diagnosis carcinoma of the stomach. The insured died from this ailment and the claims were held to be conclusive evidence that he was not in good health at the time the policy was issued. It will be noted that it was the insured's *own claims for disability* which were held to be conclusive and that these antedated the policy. Here we followed the case of Kirk v. Metropolitan Life Ins. Co., 336 Mo. 765, 81 S.W. 2d 333, which held that uncontradicted statements made in a proof of death were conclusive against the beneficiary making them.

The case of Berne v. Prudential Insurance Co. of America, above cited, had to do with a claim for double indemnity and accidental death. There it was held that the presumption of accident arising from death by gunshot wound, which favored the plaintiff, was overcome by evidence that the insured was shot while in the act of committing a burglary. There the burden was upon the plaintiff to prove accidental death and he failed because the favorable presumption took flight before the facts of the case. Quite the converse is true here, for the burden is on the defendant to prove its affirmative defense. Parker v. Atlanta Life Ins. Co., Mo.App., 112 S.W.2d 885; Wilson v. Kansas City Life Ins. Co., 233 Mo.App. 1006, 128 S.W.2d 319.

In the other case of this court to which we are cited, Russell v. Missouri Insurance Co., we held that hospital records kept under the statute then in force carried a presumption of verity, and were conclusive of the statements contained in them if not contradicted. In so holding we followed a line of cases by this court and. the Kansas City Court of Appeals, some of which are: Smith v. Missouri Ins. Co., Mo.App., 60 S.W.2d 730; White v. American Life & Accident Co. of St. Louis, Mo. App., 90 S.W.2d 118; Truitt v. National Life & Accident Ins. Co., 236 Mo.App. 1036, 161 S.W.2d 683; and Hendricks v. National Life & Accident Ins. Co., 240 Mo.App. 557, 210 S.W.2d 706.

It appears doubtful that such force should have been accorded hospital records under the prior statute and our cases so holding should be overruled, but, regardless of that, hospital records are now admissible under the Uniform Business Records as Evidence Act. Sections 490.-660–490.680, RSMo 1949, V.A.M.S.; Melton v. St. Louis Public Service Co., 363 Mo. 474, 251 S.W.2d 663; Allen v. St. Louis Public Service Co., Mo.Sup., 285 S.W.2d 663. This act does nothing more than make the records competent evidence. It does not prescribe the weight to be ac-

corded them and consequently they fall into a category of any other business record. The jury or the fact finder may believe or disbelieve them. The records are documentary in character, for it may be said that the term "documentary evidence" is broad enough to include any form of writing. Shaw v. American Ins. Union, Mo.App., 33 S.W.2d 1052. But before documentary evidence may be said to be conclusive in respect to the truth of the statements within it, it must be an instrument or record to which the person sought to be bound is a party, or otherwise vouches for, or is estopped to deny its truth. There are exceptions to this where a statute fixes the evidentiary weight to be accorded a record, but we are not concerned with that here. Ireland v. Manufacturers & Merchants Indemnity Co., Mo.App., 298 S.W.2d 529; Johnson v. Missouri Ins. Co., Mo.App., 46 S.W.2d 959. Records, which consist of written findings of physicians, should be given no more weight than the oral testimony of such physicians if they had been called as witnesses, and in such event the jury could disbelieve their testimony if it saw fit. It must consequently be held that the court properly refused to direct a verdict for the defendant.

The foregoing appears to be in conflict with Goodwin v. Kansas City Life Ins. Co., Mo.App., 279 S.W.2d 542, in which the Kansas City Court of Appeals restates that hospital records, being unimpeached or unchallenged, are conclusive.

Appellant also contends that the court improperly excluded that portion of the record which said that the patient related that at the age of seven he was told that he had a leaky heart by a doctor who was treating him for chicken pox. In Allen v. St. Louis Public Service Co., Mo.Sup., 285 S.W.2d 663, loc. cit. 667, in speaking of hospital records, the court said:

"Much discretion must remain in the trial court, and, of course, all records admitted must be confined to and connected with the bona fide obser-

vation, diagnosis and treatment of the patient in question."

There was no abuse of the discretion of the court in excluding the mentioned evidence. It was quite remote and very indefinite. There is nothing to show that the insured's heart had been examined by a physician, or who, or what kind of a doctor he was talking about. It could, therefore, have no value as evidence and the court properly excluded it.

 The remaining point for consideration is that the court erred in excluding the application signed by the insured in which he declared that he was in good health and had never had a disease of the heart. The defendant attempted to charge fraud in the procurement of the policy, in its answer, but the court held that the evidence could not go beyond the policy which stated that it was the entire contract. This was erroneous, for one may show that they have been fraudulently induced to enter a contract. Metropolitan Paving Co. v. Brown-Crummer Inv. Co., 309 Mo. 638, 274 S.W. 815; Dowd v. Lake Sites, Inc., Mo.Sup., 276 S.W.2d 108. It cannot be said, however, that its exclusion was prejudicially erroneous, for the jury was instructed that the plaintiffs could not recover if the insured was not in sound health at the time the policy was issued. The jury must, therefore, have found that he was in sound health, and this disposed of any fraud, for it found to be true that which the defendant contended was fraudulently false.

For the foregoing reasons, it is the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

ANDERSON, P. J., MATTHES, J., and GEORGE P. ADAMS, Special Judge, concur.

Supplemental Opinion

PER CURIAM.

 Since it appears to the court that the opinion herein announces a rule of law in conflict with previous opinions of this court and opinions of the Kansas City Court of Appeals, and deals with a question of general interest and importance, said cause is by the court of its own motion transferred to the Supreme Court for the purpose of re-examination by that court of the existing law on the subject matter involved, and for final and authoritative determination.