James BAUGH and Rosalie Baugh, Respondents,

v.

LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE, a Corporation, Appellant.

No. 46184.

Supreme Court of Missouri, Division No. 1.

Dec. 9, 1957.

Louis J. Portner and Echeal T. Feinstein, St. Louis, for appellant.

Raymond J. Lahey, St. Louis, for respondents.

HOLMAN, Commissioner.

In this action plaintiffs, as beneficiaries, sought to recover upon a policy of life insurance issued by the defendant upon the life of their son, William L. Baugh, in the sum of $1,000. A jury trial resulted in a verdict for plaintiffs, James and Rosalie Baugh. Defendant appealed from the ensuing judgment to the St. Louis Court of Appeals. That court affirmed the judgment but was of the view that its opinion announced a rule of law which was in conflict with previous opinions of that court and the Kansas City Court of Appeals and dealt with a question of general interest and hence the court, of its own motion, transferred the case here "for the purpose of re-examination * * * of the existing law on the subject matter involved, and for final and authoritative determination." Baugh v. Life and Casualty Insurance Co. of Tenn., Mo.App., 299 S.W.2d 554, 559. In this situation it is the duty of this court to review the record and determine the cause in the same manner as on original appeal. Article V, Section 10, Constitution of Missouri 1945, V.A.M.S.

Our review of the record indicates that the statement in the opinion adopted by the court of appeals regarding the pleadings, facts, and the principal issue involved is adequate and accurate and we accordingly adopt the following therefrom:

"In their petition the plaintiffs alleged that the policy was issued on April 6, 1953. It was alleged that the insured fully complied with all the terms and conditions of the policy and that on February 4, 1955, while the policy was in force, the insured died. There was a further allegation about the defendant's refusal to pay.

"The defendant's answer admitted that the policy was issued and the premiums paid. The death of the insured was also admitted. By way of affirmative defense it was alleged that the insured had falsely represented that he was in sound health at the time that the policy was issued, and that the defendant relied upon the representations made, in issuing the policy. The answer also set up the defense that the policy limited the defendant's liability to a return of the premiums if the insured was not in sound health at the time that the policy was issued. This was followed by an allegation that the insured was suffering from heart disease at the time he applied for the policy and at the time it was issued.

"The death of the insured having been admitted, the plaintiffs rested their case after introducing the policy in evidence. The policy contained the following clause:

"'Incontestability—Within two years from date of issue of this Policy, the liability of the Company under same shall be

limited to the return of premiums paid if the Insured was not in sound health on the date of issuance and delivery of this Policy. After this Policy shall have been in force during the lifetime of the Insured for two years from date of issue, it shall be incontestable except for non-payment of premium.'

"The defendant called as a witness the supervisor of the Medical Record Department of the St. Louis City Hospital. She identified the medical record of the insured and described the method of keeping the hospital records from which the medical record of the insured had been taken. The court admitted the record as records kept in the usual course of the business of the hospital, with the exception of one part which states: 'Pt. states that at age 7 he had chicken pox and was told by a doctor he had a leaky heart.'

"The records disclose that the insured was first admitted to the hospital on March 18, 1954, at which time he gave a history of having had an acute onset of severe breathlessness the day before while driving from Washington, Missouri, to St. Louis. He had stopped en route to consult a physician and was given a shot and advised to enter a hospital. According to the record he had a 'definitive cardiac vascular lesion denoted by an organic murmur'. His ailment was diagnosed as '1 congenital aortic stenosis, 2 subacute bacterial endocarditis due to streptococcus viridans'. He was discharged from the hospital on April 27, 1954, but was again admitted on August 10, 1954, and remained until August 26. During this second hospitalization his ailment was diagnosed as congenital aortic stenosis and subacute bacterial endocarditis. The insured again entered the hospital on February 3, 1955, and died the day following. A post-mortem examination was made and gave as a 'Primary Diagnosis Heart, endocarditis, healed, with arotic [aortic] vegetation and stenosis Heart, hypertrophy (1180 grams) Heart, myocarditis, healed Heart, subaortic stenosis (congenital)'.

"A physician was called by the defendant to examine the X-rays and explain the hospital record. In answer to a hypothetical question he said that from the X-rays he could tell that the heart was enlarged and from the notation 'congenital stenosis' he would say that the stenosis was present from birth by a simple acceptance of the word 'congenital.' He was asked on cross-examination if he would change his opinion if he were informed that the insured had done very hard manual labor and he said that he would not.

"The defendant sought to introduce in evidence the application for the policy, which was signed by the insured and dated March 20, 1953. It stated in part that the applicant never had a disease of the heart and declared that the statements made were true and that any misrepresentation would render the policy void, and that the policy should not be binding upon the company unless the applicant should upon its date be in sound health. There was an objection to the introduction of the application on the ground that the policy itself stated that it constituted the entire conract. The objection was sustained and the application was not permitted in evidence.

"Plaintiff, Rosalie Baugh, the mother of the deceased, testified in rebuttal that her son had pneumonia when he was about eighteen months old but that after that he suffered no diseases except those ordinarily associated with childhood, such as mumps and chicken pox, and for these no doctor attended him. He was raised on a farm where he hoed, picked and plowed cotton, and drove a tractor. Later when they moved to the city he did factory work. He was troubled by occasional nose bleeding and was told by a specialist it was due to a crooked bone in his nose that should be corrected. That was in 1950, which was the last time he was troubled with it. He had never been treated for a heart ailment or told that he suffered from it until he entered the City Hospital in 1954. His health, with

the exceptions stated, had been good and he was steadily employed.

"The defendant moved for a directed verdict at the close of the entire case and it is contended that the court erred in refusing to direct a verdict for the defendant. The ground assigned for the alleged error is that the hospital records, to the effect that the insured had congenital heart disease, were not impeached, and that the records are therefore conclusive. It is, of course, quite obvious that if the insured had congenital heart disease he was not in sound health at the time that the policy was issued to him." 299 S.W.2d loc. cit. 556, 557.

As indicated by the foregoing, the first point briefed involves the question as to whether uncontradicted hospital records stating that the insured had congenital heart disease preclude recovery upon the instant policy. In considering that question we will assume (but do not decide) that the testimony of insured's mother was not sufficient to contradict or impeach the record evidence under consideration.

■■ The well-established general rule on this question is that "for documentary evidence to be conclusive it must be an instrument or record having legal efficacy to which the one sought to be bound is in some way a party, or the truth of which he vouches for, either expressly or in legal effect, or is estopped to deny. Blue v. Supreme Camp of American Woodmen, Mo. App., 135 S.W.2d 373; Johnson v. Missouri Ins. Co., Mo.App., 46 S.W.2d 959; Shaw v. American Ins. Union, Mo.App., 33 S.W.2d 1052; Wilson v. Kansas City Life Ins. Co., 233 Mo.App. 1006, 128 S.W.2d 319." Ireland v. Manufacturers & Merchants Indemnity Co., Mo.App., 298 S.W.2d 529, 533. It is obvious that the instant records do not come within the scope of that rule as they are merely a record of the findings and opinions of the physicians. Two of the cases cited by defendant, i. e., Toler v. Atlanta Life Ins. Co., Mo.App., 248 S.W.2d 53, and Kirk v. Metropolitan Life Ins. Co., 336 Mo. 765, 81 S.W.2d 333, involve the question of

the conclusive effect of unexplained and uncontradicted statements against interest contained in a proof of loss. These cases come within the foregoing general rule and hence are of no assistance in determining the instant issue. However, defendant has cited the case of Russell v. Missouri Ins. Co., Mo.App., 232 S.W.2d 812, which lends support to its claim that the records in question are conclusive and sufficient to bar recovery by plaintiffs. Therein the court stated that hospital records "constitute prima facie evidence of the facts stated in them and conclusive evidence of those facts when there is nothing in evidence to controvert them." 232 S.W.2d loc. cit. 815. In so holding, the St. Louis Court of Appeals followed a number of cases previously decided by that court and the Kansas City Court of Appeals which include the following: Smith v. Missouri Ins. Co., Mo.App., 60 S.W.2d 730; White v. American Life & Accident Co. of St. Louis, Mo.App., 90 S.W. 2d 118; Tinsley v. Washington Nat. Ins. Co., Mo.App., 97 S.W.2d 874; Truitt v. National Life & Accident Ins. Co., 236 Mo. App. 1036, 161 S.W.2d 683; and Hendricks v. National Life & Accident Ins. Co., 240 Mo.App. 557, 210 S.W.2d 706.

We have searched those cases in an effort to ascertain the basis for extending the general rule, quoted supra (which relates to the conclusive effect of certain documentary evidence that is held to be binding upon a party), to apply to hospital records generally. The reason does not clearly appear. We are inclined to the view that the extended rule may have originally resulted from an inept application of the correct rule. We also suspect that the courts were influenced by the fact that hospitals, at the time the cases in question were decided, were required by law to keep rather extensive records. Section 9777 RSMo 1939, Mo.R. S.A. That section has since been repealed, and in lieu thereof was enacted what is now Section 193.270 RSMo 1949, V.A.M.S., which only requires that records be kept of all statistical data that must be reported under the provisions of the Uniform Vital

Statistics Act. Laws 1947, Vol. 2, p. 237 et seq.

■ We have been unable to discover any sound reason why uncontradicted hospital records should have been given the conclusive effect afforded them in the cases heretofore cited. However, irrespective of the situation that may have existed under Section 9777, supra, it is now well settled that the admissibility of hospital records is presently governed by the provisions of the Uniform Business Records as Evidence Law enacted in 1949, Section 490.660–490.-690, RSMo 1949, V.A.M.S. Melton v. St. Louis Public Service Co., 363 Mo. 474, 251 S.W.2d 663; Gray v. St. Louis-San Francisco Ry. Co., 363 Mo. 864, 254 S.W.2d 577; Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663.

■ It has been said that all the aforementioned Act does, essentially, is to eliminate the hearsay objection to records that have been properly qualified thereunder. Allen v. St. Louis Public Service Co., supra. It is also important to note that said Act contains no provision relating to the weight that should be given to records admitted thereunder. Hospital records are not specifically mentioned in the Act and hence it would appear that they would be dealt with in the same manner as other business records. Therefore, unless the record is of the type that is considered binding upon a party under the general rule heretofore quoted, it is for the jury to weigh that evidence, along with the other facts and circumstances before it, and either believe or disbelieve the facts purportedly disclosed by the record. "As between written and oral evidence, the only particular value which the former has over the latter lies in the weight to be accorded it, the former being usually regarded as the more reliable in view of the frailties of human memory; but such distinction does not serve in any manner to affect the question of its conclusiveness, since the one is as much the product of a human agency as the other." John-

son v. Missouri Ins. Co., Mo.App., 46 S.W. 2d 959, 961.

In the instant case the recitals in the hospital record that the insured was afflicted with congenital heart disease were clearly a reflection of the opinion of the physician or physicians making the entries and were based, no doubt, upon their examination of the patient and their interpretation of various X-rays taken and other tests that had been performed. If these physicians had appeared at the trial and testified as to their opinions and findings the jury could have disbelieved their testimony if it saw fit. We can see no reason why a written record of their findings should be accorded conclusive effect while the oral testimony of the physicians making the record would not be given such conclusive force. While a written hospital record may be considered more reliable because it is required to be made at or near the time of the examination or event, on the other hand, it should not be overlooked that a physician making an entry thereon is not under oath and might not give the sober and deliberate consideration to an opinion or finding so recorded that he would give to an opinion stated under oath in the trial of a case.

It follows from what we have said that the hospital records in the case under review were not conclusive upon the issue as to whether or not insured had suffered from congenital heart disease and hence the trial court did not err in overruling defendant's motion for a directed verdict. We note that the Kansas City Court of Appeals in Goodwin v. Kansas City Life Ins. Co., Mo. App., 279 S.W.2d 542, 543 (decided since the enactment of the Uniform Business Records as Evidence Law) restated the rule that the hospital records therein "constituted *prima facie* evidence of the facts therein shown and, being unimpeached and unchallenged, they became conclusive." Our holding herein would indicate that the Goodwin case (and prior cases announcing the same rule) should no longer be followed.

The next point briefed by defendant is that the trial court erred in excluding that part of the hospital records which recited, "Pt. states that at age 7 he had chicken pox and was told by a doctor he had a leaky heart." We recognize that the Uniform Business Records as Evidence Law has eliminated the hearsay objection in so far as it dispenses with the necessity of producing in court the person who has made the record. However, it does not ordinarily render a statement admissible which may be said to be hearsay based upon hearsay. We have the view that the instant statement was that type of hearsay and hence inadmissible unless it may be said to constitute an admission against interest.

It may be noted that in addition to the defense that insured was not in sound health on the date of the issuance of the policy, under the provision heretofore quoted, the defendant also interposed the defense that insured had falsely represented in his application for the policy that he had never had heart disease. It is common knowledge that the way a layman usually determines that he has a specific disease affecting an internal organ is to be so advised by a doctor. We recognize that the instant record referred to an event that had occurred 13 years before the policy was applied for and that the doctor was not identified and the details concerning his examination were not supplied. However, under the factual situation before us, we think those matters affected only the weight to be given the evidence and not its admissibility. The defendant herein pleaded that it issued the policy in reliance upon the false representation of deceased that he had never had heart disease. We have concluded that the record recital we are considering was admissible as an admission against interest tending to prove the falsity of the representation by deceased, in the application, that he had never had heart disease.

It is also contended by defendant that the court erred in excluding the aforementioned application. The theory of the trial court was that it was inadmissible because the policy contained a provision that it "constituted the entire contract between the parties." The court erred in so ruling. As we have indicated, the defendant charged fraud in the procurement of the policy. Notwithstanding the foregoing provision that the policy constituted the entire contract, the defendant could properly show that it had been fraudulently induced to enter into the policy contract. See Dowd v. Lake Sites, Inc., Mo.Sup., 276 S.W.2d 108, and authorities cited therein. Cases indicating that an application is not admissible in a case of this kind where a copy thereof is not attached to the policy (or the substance thereof endorsed on the policy) appear to be based upon Section 377.350, RSMo 1949, V.A.M.S., which section is applicable to policies issued by insurers operating under the stipulated premium plan and would not appear to have any application to the instant policy. Toler v. Atlanta Life Ins. Co., Mo.App., 248 S.W. 2d 53.

Defendant offered Instruction D which submitted the defense of fraud in the procurement of the policy on the theory that the deceased falsely stated that he had never had heart disease. The court properly refused that instruction because both the application and evidence tending to prove the false representation had been excluded and hence there was no evidence to support the submission. Since we have ruled that those items of evidence were admissible, it would appear that upon another trial defendant will be entitled to an instruction of that nature.

The judgment of the circuit court is reversed and cause remanded for a new trial.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN C., is adopted as the opinion of the court.

All concur.